# 24-0502-cv

## United States Court of Appeals

*for the*

## Second Circuit

————————————————

IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001,

————————————————

COZEN O'CONNOR,

*Objector-Appellant,*

— v. —

MOTLEY RICE LLC, KREINDLER & KREINDLER LLP,
SPEISER KRAUSE, P.C., ANDERSON KILL P.C.,

*Respondents-Appellees.*

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPELLANT'S BRIEF AND SPECIAL APPENDIX

SEAN P. CARTER
ABBY J. SHER
COZEN O'CONNOR
*Appellant*
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
(215) 665-2000

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure Rule 26.1, Cozen O'Connor, P.C., Sidley Austin LLP, and Ellis George, LLP, Appellants in the appeals pending at Docket Nos. 24-502 and 24-593, certify those entities do not have any parent corporations, and no publicly held company owns 10% or more of Appellants' stock.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF JURISDICTION...........................................................6

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................8

STATEMENT OF THE CASE.................................................................9

    I.     The 9/11 MDL ...........................................................9

    II.    The *Havlish* Plaintiffs' Applications for a Common
            Benefit Fund ............................................................16

    III.   The District Court's Establishment of a Common Benefit
            Fund..........................................................................21

    IV.   The District Court's Orders Abandoning Any Common Benefit
            Fund Process Entirely and Denying Appellants Any Means to
            Obtain Compensation for Common Benefit Work .............................27

SUMMARY OF ARGUMENT ...............................................................30

STANDARD OF REVIEW ....................................................................33

ARGUMENT .........................................................................................34

    I.     The District Court Erred in Failing to Establish a Common
            Benefit Fund to Allocate Recovery of Fees Arising from All
            9/11 MDL Claims....................................................34

    II.    The District Court Improperly Limited Any Common Benefit
            Fund to Allocating Fees Based on Direct Assistance to
            Successful Claims of Particular 9/11 Plaintiffs...................................41

    III.   The District Court Erred in Declining to Establish a Common
            Benefit Fund that Prevents Unjust Enrichment...................................47

CONCLUSION ......................................................................................51

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Disaster of Fla. Everglades on Dec. 19, 1972*,
549 F.2d 1006 (5th Cir. 1977) ....................................................35, 51

*Amorin v. Taishan Gypsum Co.*,
861 F. App'x 730 (11th Cir. 2021) .................................................45

*Baker v. Health Mgmt. Sys.*,
264 F.3d 144 (2d Cir. 2001) .........................................................33

*Boeing Co. v. Van Gemert*,
444 U.S. 473 (1980).....................................................................47

*In re: Davol, Inc./C.R. Bard, Inc., Polypropyelene Hernia Mesh
Prods. Liab. Litig.*,
No. 2:18-md-02846, U.S.D.C. S.D. Ohio, ECF No. 70 ........39, 40, 42

*In re Ethicon, Inc. Power Morcellator Prods. Liab. Litig.*,
2016 U.S. Dist. LEXIS 54017 (D. Kan. Apr. 21, 2016)...................36

*First Nat'l Bank v. Pepper*,
454 F.2d 626 (2d Cir 1972) ..........................................................48

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret.
Sys.*,
814 F.3d 652 (2d Cir. 2016) .........................................................33

*Fresno Cnty. Emples. Ret. Ass'n v. Isaacson*,
925 F.3d 63 (2d Cir. 2019) ...........................................................33

*In re GM LLC Ignition Switch Litig.*,
477 F. Supp. 3d 170 (S.D.N.Y. Aug. 7, 2020) ...............................36

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
2008 U.S. Dist. LEXIS 17535 (D. Minn. Mar. 7, 2008) ..................37

*Honeywell Int'l, Inc. v. Purolator Prods. Co.*,
468 F.3d 162 (2d Cir. 2006) ...........................................................7

ii

*Kaplan v. Reed Smith LLP*,
  919 F.3d 154 (2d Cir. 2019) ................................................................7

*Marion S. Mishkin L. Off. v. Lopalo*,
  767 F.3d 144 (2d Cir. 2014) ..........................................................36, 38

*In re: National Prescription Opiate Litigation*,
  No. 1:17-md-2804, U.S.D.C. N.D. Ohio, ECF No. 4428................................39

*In re Roundup Prods. Liab. Litig.*,
  544 F. Supp. 3d 950 (N.D. Cal. 2021) ................................................51

*Schreiber v. Friedman*,
  2020 U.S. Dist. LEXIS 169780 (E.D.N.Y. Sept. 16, 2020) ..............................48

*Smiley v. Sincoff*,
  958 F.2d 498 (2d Cir. 1992) ..........................................................35, 36

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)....................................................................47

*In re Vioxx Prods. Liab. Litig.*,
  802 F. Supp. 2d 740 (E.D. La. 2011)...................................................36

*Wilson v. FBI*,
  91 F.4th 595 (2d Cir. 2024) ...........................................................33

*Yannitelli v. D. Yannitelli & Sons Constr. Corp.*,
  247 A.D.2d 271 (1st Dept. 1998) ......................................................48

*In re Zyprexa Prods. Liab. Litig.*,
  594 F.3d at 130 ...........................................................34, 35, 38, 47

**Statutes and Rules**

28 U.S.C. § 1291 .........................................................................7

28 U.S.C. § 1605A .........................................................................6

34 U.S.C. § 20144 ........................................................................19

42 U.S.C. § 10609 ........................................................................19

iii

Fed. R. Civ. P. 54(b) ............................................................................7

Consolidated Appropriations Act, Pub. L. 117-328, 2023 (enacted
    December 29, 2022) (now codified at 34 U.S.C. § 20144) ................................19

Justice Against State Sponsors of Terrorism Act, Pub. L. No. 114-222,
    130 Stat. 852 (2016) (codified at 28 U.S.C. § 1605B) ........................................15

Justice for United States Victims of State Sponsored Terrorism Act,
    34 U.S.C. § 20144 (formerly codified at 42 U.S.C. § 10609) ...........................19

United States Victims of State Sponsored Terrorism Fund
    Clarification Act, Pub. L. No. 116-69, Title VII, § 1701 (c)
    (January 2, 2019) .................................................................................19

## Other Authorities

22 N.Y.C.R.R. § 1200.0 ........................................................................48

Manual for Complex Litigation, Fourth (2004) ..............................................34, 47

Duke Law Center for Judicial Studies, Guidelines and Best Practices
    for Large and Mass-Tort MDLs (2d Edition 28) ............................................5, 38

Model Rules of Professional Conduct Rule 1.3 ..............................................48

## PRELIMINARY STATEMENT

This appeal concerns the district courts' obligations to structure the allocation of attorneys' fees in complex, multi-party litigation in a manner that protects all plaintiffs and the courts themselves by ensuring that appropriate incentives guide the conduct of litigation that provides a common benefit to various plaintiffs. This case involves *In re Terrorist Attacks on September 11, 2001,* 03-md-1570 (the "9/11 MDL"), one of the most complex and time-intensive multi-district litigation cases, involving a range of different plaintiffs and their attorneys knitted together in pursuit of claims that various defendants provided material support to al Qaeda that resulted in the attacks of September 11, 2001. This appeal challenges (1) the district court's initial establishment of a narrow common benefit fund focused only on efforts to secure judgments against one of many defendants (the Islamic Republic of Iran), and (2) its later determination that no common benefit fund was warranted at all. Both conclusions rested on the flawed rationale that any allocation of fees among attorneys was appropriately limited to efforts immediately related to securing judgments against that single defendant, and did not need to address and serve the interests of the 9/11 MDL as a whole, or consider holistically how efforts to advance all plaintiffs' interests in the 9/11 MDL were relevant to securing those judgments and related recoveries.

The parties to this appeal are two sets of attorneys. Both have secured judgments against Iran and have for more than two decades advanced the overall 9/11 MDL litigation against the Kingdom of Saudi Arabia, Sudan, bank defendants, and other defendants that also yielded the judgments against Iran and the opportunities for certain plaintiffs to secure significant compensation as a result of those judgments. One set of attorneys, Appellees, represent individual plaintiffs who, as the litigation continued, were able to secure judgments against Iran or became entitled to compensation with respect to such judgments for billions of dollars when Congress, more than twelve years after the initiation of litigation, created a fund designed to benefit certain holders of judgments against Iran. As a result, those attorneys have secured hundreds of millions of dollars as a result of contingent fee arrangements.

The other set of attorneys, Appellants, have undertaken a very substantial portion of the work in the 9/11 MDL, and in many phases the lead role, benefitting all 9/11 plaintiffs for more than 20 years. They represent commercial plaintiffs who are ineligible for the Congressionally provided compensation. For over two decades, Appellants have devoted more than a hundred thousand hours in attorney time to prosecute claims against a broad spectrum of defendants on behalf of all plaintiffs in the 9/11 MDL and, along with their clients, contributed tens of millions of dollars to fund necessary expenses of this litigation. This common benefit work and

2

expense, which Appellants undertook pursuant to duties and obligations assigned by the district court, is not only essential to the plaintiffs' prosecution of claims, but also is critical to the district court's efficient management of the 9/11 MDL. Appellants seek to have their efforts compensated, to prevent unjust enrichment, and to advance their efforts on behalf of their clients through the creation of a common benefit fund designed to encompass the entire 9/11 MDL and to holistically allocate fees based on the benefits every plaintiff derives from efforts advancing all the 9/11 plaintiffs' interests.

The district court's resolution of issues related to a common benefit fund proceeded in two steps. First, the court considered various proposed approaches to constructing a common benefit fund and initially chose to establish a common benefit fund limited solely to attorneys' efforts to secure default judgments against Iran and, for allocation, limited solely to those efforts directly resulting in securing those judgments. The court rejected a proposed common benefit fund designed to encompass the full scope of claims and attorneys' efforts related to the 9/11 MDL as a whole and, even with respect to the chosen common benefit fund focused only on the default claims against Iran, rejected considering the broader efforts to advance the 9/11 plaintiffs' interests in the allocation of fees related to the Iranian judgments.

In a second step, the district court later determined that no common benefit fund was needed or appropriate at all for fees Appellees had obtained. This

determination resulted from a private agreement struck between Appellees, who had secured those fees based on their clients' judgments against Iran, and the attorneys in the *Havlish* proceeding, who had initially secured a default judgment against Iran and moved for a narrow common benefit fund – but who had recovered no substantial fees because the majority of their clients with judgments against Iran elected to forgo the Congressionally created fund, in order to preserve certain execution initiatives based on their Iran judgments. Because the district court viewed the function of any common benefit fund as only to serve as a "success fee" for the *Havlish* counsel for their efforts to secure default judgments against Iran, and the size of that fee was accepted by moving counsel, the court found no need to create any common benefit fund.

As a result, the district court failed to create a common benefit fund that was consistent with the scope and function of the 9/11 MDL, and thus failed to serve the interests of all the 9/11 MDL plaintiffs and of the court. In particular, the district court failed to create a common benefit fund to compensate all common benefit work performed for the benefit of the 9/11 MDL plaintiffs as a whole, instead limiting the common benefit fund's application solely to the work performed by a single firm with respect to work related to recovery from a single defendant. It further failed to consider holistically how the extensive work undertaken by Appellants and others on behalf of and for the benefit of all 9/11 MDL plaintiffs, including claimants

4

against Iran, contributed to recovery by Appellees' clients. And, the district court failed in both these respects to address basic principles of unjust enrichment, ensuring that there would be no sharing of fees recovered in the 9/11 MDL with firms that had shouldered a massive portion of the substantive work necessary to prosecute the 9/11 MDL for all plaintiffs, and contributed hundreds of millions of dollars of unreimbursed attorney time and costs to the 9/11 MDL.

These aspects of the district court's treatment of the common benefit fund here are inconsistent with the basic legal principles governing the construction and operation of MDLs, as well as principles underpinning any common benefit fund's function of ensuring that attorneys' efforts on behalf of all plaintiffs for their common benefit are allocated among the contributing attorneys. The district court's approach provides for no recovery by attorneys who have and would continue to provide common benefits to all MDL plaintiffs, while providing a windfall for others who did not. These errors are particularly detrimental given the increase in recent years of MDL and other complex litigation, which necessarily depend upon leadership committees to coordinate efforts and assume responsibilities imposed on them by the courts to "ensure the effective management of the litigation." *See* DUKE LAW CENTER FOR JUDICIAL STUDIES, Guidelines and Best Practices for Large and Mass-Tort MDLs (2d Edition 28) at 29. The district court's narrow approach to the establishment and function of common benefit funds harms the

interests of MDL plaintiffs and undermines the "effective management of the litigation." *Id.* It does so by providing an incentive for MDL leadership attorneys such as Appellants to focus exclusively on work perceived to offer the best chance for a "success fee" windfall related to narrow subsets of the litigation, inevitably leading to infighting among MDL leadership for control of the "low hanging fruit." The court's misguided approach also provides a disincentive to MDL leadership to perform difficult work on challenging claims (or administrative functions), resulting in ineffective representation of certain MDL plaintiffs. And, it unjustly enriches tag-along and other attorneys who are rewarded for relying on other counsel to discharge their representation obligations, by relieving the free-riders of any obligation to compensate attorneys who actually did the work required under their representation agreements. All of these outcomes, in turn, detract from the effective and efficient management of MDL litigation.

Because the district court's rulings eliminate Appellants' rights to share in fees resulting from the common benefit they provided to recovering 9/11 plaintiffs, and otherwise significantly curtail the efficiencies of multi-district litigation, the orders must be vacated.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over the claims against Iran pursuant to 28 U.S.C. § 1605A. The district court retained ancillary jurisdiction "to

adjudicate collateral matters such as attorney's fees." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 157 (2d Cir. 2019) (citations omitted).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The appeals before this Court arise from two notices of appeal filed in thirteen separate lawsuits consolidated for pre-trial proceedings in the United States District Court for the Southern District of New York under multi-district litigation docket No. 03-MDL-1570.[1] The December 12, 2023 Order and December 22, 2023 Order that are the subject of this appeal are post-judgment fee orders arising from default judgments entered against Iran, which default judgments were made final pursuant to Federal Rule of Civil Procedure 54(b). The post-judgment orders "dismiss[ed] with prejudice" the motion to create a common benefit fund filed by other plaintiffs' counsel and made final the determination that attorneys that performed common benefit work in the 9/11 MDL will receive zero compensation from Appellees' fees from the Congressionally created fund. *See Honeywell Int'l, Inc. v. Purolator Prods. Co.*, 468 F.3d 162, 164 (2d Cir. 2006) ("[A]n order awarding attorneys' fees and

---

[1] Appellants filed the same opening brief in the appeals pending at docket nos. 24-502 and 24-593 on the basis that the appeals present the same issues in different cases that are consolidated in the 9/11 MDL. The appeal pending at docket no. 24-502 involves Appellees Motley Rice, Kreindler & Kreindler, Anderson Kill, and Speiser Krause. The appeal pending at docket no. 24-593 involves Appellee Baumeister & Samuels. Those appeals involve identical issues, arising from related orders, in the same MDL.

costs is not an appealable final order until the amount of fees and costs has been set by the district court.").

In the *Motley Rice, et al.* action, Plaintiffs-Appellants timely filed Notices of Appeal on January 11, 2024, and timely filed Amended Notices of Appeal on January 19, 2024. (A-1968 – A-1982). In the *Baumeister & Samuels* action, Plaintiffs-Appellants timely filed a Notice of Appeal on January 22, 2024. (A-1983 – A-1987).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred in failing to establish a comprehensive common benefit structure and criteria for the 9/11 MDL, even though the litigation has been ongoing for over 20 years, and despite the fact that the litigation has produced hundreds of millions of dollars in attorneys' fees.

2.      Whether the district court erred in directing that a common benefit fund should be established solely to reward a subset of counsel for their work on a non-adversarial default judgment against a single defendant, despite the fact that various counsel receiving contingency fees from recoveries had relied upon other attorneys to fulfill far broader obligations arising under their contingency-based representation agreements.

3.      Whether the district court erred by refusing to establish a common benefit fund to address unjust enrichment that resulted from certain attorneys

8

retaining contingency fees without compensating attorneys who performed work and advanced costs on their behalf, where the work performed was necessary to fulfill obligations arising under the relevant representation agreements.

## STATEMENT OF THE CASE

## I.    The 9/11 MDL

These appeals arise out of litigation brought by members of the 9/11 community – thousands of family members who lost loved ones in the attacks; survivors of the attacks; and commercial entities that suffered billions in losses as a result of the attacks (collectively, the "9/11 plaintiffs") – against alleged sponsors and supporters of al Qaeda. Through several separate complaints, the 9/11 plaintiffs brought suit against foreign states, financial institutions, ostensible charities, individuals, and other defendants who were alleged to have provided material support and resources to al Qaeda, in furtherance of its targeting of the United States and the 9/11 attacks themselves.[2] The suits encompass dozens of common and

---

[2] *See, e.g.*, *Federal Insurance* First Amended Complaint with Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, Filed in Accordance with Paragraph 13 of Case Management Order Number 2, Case No. 03-cv-06978, Dkt. No. 772; *Burnett* Third Amended Complaint, Case No. 02-cv-01616 (D.D.C.), Dkt. No. 29,[2] and *Burnett's* Notice of Consolidation of Pleadings, 03 MDL 1570, ECF No. 1377; *Ashton* Sixth Amended Complaint, Case No. 02-cv-06977, Dkt. No. 465; *O'Neill* Class Action Complaint, Case No. 04-cv-01922, Dkt. Nos. 1, 21-22, as amended by the *O'Neill* First Consolidated Complaint, Case No. 03 MDL 1570, ECF No. 1569.

related defendants. Several separate law firms were retained by members of the 9/11 community to represent them and prosecute their claims. Appellees Motley Rice, Kreindler & Kreindler, Anderson Kill, Speiser Krause, and Baumeister & Samuels represent the majority of the several thousand 9/11 family members and individual plaintiffs who brought lawsuits.[3] Appellant Cozen O'Connor represents the majority of the commercial plaintiffs.[4] The firms are representing these clients pursuant to contingency fee representation agreements.

In bringing suit against dozens of alleged al Qaeda sponsors and supporters, the 9/11 plaintiffs sought to secure compensation for their injuries, obtain evidence and transparency concerning sources of funding and support that enabled al Qaeda

---

[3] *See, e.g., Burnett* Third Amended Complaint, Case No. 02-cv-01616 (D.D.C.), Dkt. No. 29, and *Burnett's* Notice of Consolidation of Pleadings, 03 MDL 1570, ECF No. 1377; *Ashton* Sixth Amended Complaint, Case No. 02-cv-06977, Dkt. No. 465; *O'Neill* Class Action Complaint, Case No. 04-cv-01922, Dkt. Nos. 1, 21-22, as amended by the *O'Neill* First Consolidated Complaint, Case No. 03 MDL 1570, ECF No. 1569; *Burlingame* Complaint, Case No. 02-cv-07230, Dkt. No. 1; *Bauer* Complaint, Case No. 02-cv-07236, Dkt. No. 1; *Parker* Complaint, Case No. 18-cv-11416, Dkt. No. 5.

[4] *See Federal Insurance* First Amended Complaint with Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, Filed in Accordance with Paragraph 13 of Case Management Order Number 2, Case No. 03-cv-06978, Dkt. No. 772; *Vigilant* Insurance Complaint, Case No. 03-cv-08591, Dkt. No. 1; *Pacific Employers* Complaint, Case No. 04-cv-07216, Dkt. No. 1; *Lloyd's Syndicate 2* First Amended Complaint, Case No. 16-cv-07853, Dkt. No. 56; *Lloyd's Syndicate 53* Complaint, Case No. 17-cv-02129, Dkt. No. 1; *Muenchener Rueckversicherungs* Complaint, Case No. 17-cv-07914, Dkt. No. 1; *Wurttembergische Versicherung* Complaint, Case No. 18-cv-12257, Dkt. No. 1.

to carry out the attacks, use the civil litigation system to punish al Qaeda's sponsors and deter the sponsorship of terrorism, and disable al Qaeda's support infrastructure. The plaintiffs principally predicated their claims on the civil cause of action established by the Anti-Terrorism Act, common law theories, and in the case of the foreign state defendants, exceptions to sovereign immunity established by the Foreign Sovereign Immunities Act. *See supra* at pp. 9-10 n. 2-4. The diligent prosecution of the full spectrum of claims encompassed in the plaintiffs' suits was a necessary requirement of the representation agreements, and therefore, was the precondition for counsels' entitlement to receive contingency fees from recovery from any source.

In December 2003, the Judicial Panel on Multidistrict Litigation determined that the prosecution of these complex and interrelated claims required consolidated and coordinated treatment, and ordered that actions against defendants who allegedly promoted, financed, sponsored, or otherwise supported the terrorist attacks of September 11, 2001 be consolidated and transferred to the United States District Court for the Southern District of New York, and assigned to the Honorable Richard C. Casey. (ECF No. 1).[5] The resulting MDL encompasses claims by thousands of individual wrongful death and personal injury claimants, as well as commercial

---

[5] All "ECF" citations refer to the 9/11 MDL docket, 03-md-1570, unless otherwise noted. All "A" citations refer to the Joint Appendix, and all "SPA" citations refer to the Special Appendix, submitted herewith.

11

claimants seeking recovery of several billions dollars in economic losses, against dozens of defendants those plaintiffs sought to hold accountable for the September 11th attacks. The nature and scope of the 9/11 MDL proceedings demanded that counsel take coordinated and simultaneous efforts to facilitate the efficient conduct of the litigation.

At the outset, Judge Casey established a committee structure for the 9/11 MDL to address the anticipated complexities of the litigation. On June 15, 2004, Judge Casey issued Case Management Order #3 ("CMO3") in the 9/11 MDL, which addressed, in part, "Organization of Counsel." (ECF No. 248). CMO3 established a single Plaintiffs' General Steering Committee, operating through two Plaintiffs' Executive Committees ("PECs"), one comprised of attorneys representing the interests of wrongful death and personal injury plaintiffs and the other for attorneys representing commercial plaintiffs. The two committees were required to work in coordination with one another in the prosecution of the 9/11 MDL, and have done so. The committees were not split by defendants, and the committees were charged with responsibility to guide the litigation as a whole, in furtherance of the district court's interest in managing a coordinated approach for pretrial proceedings. *See, e.g.,* CMO3 at ¶ ¶ 3, 11. The district court imposed significant obligations on the committees for the benefit of all plaintiffs, which were critical to the district court's ability to effectively manage the proceedings.

In directing the PECs to coordinate, the district court recognized that work necessary to represent the interests of the plaintiffs and to advance the 9/11 MDL would need to proceed on multiple fronts simultaneously. *See* CMO3 ¶ 12 (directing committees to "distribute all work assignments in such a manner as to promote the orderly and efficient conduct of this litigation, and [] avoid unnecessary duplication and unproductive effort"). CMO3 directed the PECs to "conduct all pretrial proceedings involving common legal and factual issues, whether relating to liability or damages, on behalf of all plaintiffs." CMO3 ¶ 10. CMO3 specifically provided:

> 11. In order to fulfill its responsibilities, the Plaintiffs' Executive Committees are authorized to, among other things:
>
> > a. Prepare, serve, and file motion papers and argue motions;
> >
> > b. Prepare, serve and file interrogatories, requests for admissions, document requests and other necessary discovery;
> >
> > c. Prepare, serve and file answers and responses to defendants' discovery to the extent that such discovery involves common issues;
> >
> > d. Prepare for and conduct depositions;
> >
> > e. Enter into fact stipulations with the defendants;
> >
> > f. Consult and hire expert consultants and witnesses; and
> >
> > g. Otherwise coordinate the work of plaintiffs' counsel and perform such other functions as necessary and appropriate to complete pretrial proceedings in the Consolidated Action and/or as may be authorized by the Court.

CMO3 ¶ 11.

13

The district court appointed attorneys at Cozen O'Connor to serve as Co-Chairs of the PEC for Commercial Claims and Liaison Counsel for the PEC for Commercial Claims; Cozen O'Connor also holds all seats on the PEC for Commercial Claims. *See* CMO3 ¶¶ 4, 5, 7. Cozen O'Connor has continued to fulfill those assigned leadership functions since the establishment of the PEC structure nearly 20 years ago. Consistent with the duties and obligations imposed by the district court pursuant to CMO3, the prosecution of the interrelated claims against al Qaeda's sponsors and supporters has proceeded on a coordinated basis throughout that 20 year period, under the leadership of a dedicated subset of the attorneys appointed to the PECs, including attorneys from Cozen O'Connor.

The investment of time and resources to prosecute these claims for the plaintiffs and help manage the 9/11 MDL for the court has been massive, as reflected by the nearly 10,000 district court docket entries to date. (A-1 – A-1967). The 9/11 MDL has encompassed extensive litigation involving complex questions of sovereign immunity, diplomatic and consular immunity, Constitutional due process, the application of evolving counter-terrorism laws and precedents to myriad different factual contexts, the state secrets doctrine, and a range of other issues. Defendants targeted by the plaintiffs' suits have produced millions of pages of documents in discovery, primarily in foreign languages, which had to be translated and then analyzed. Discovery has been contentious, and required countless motions

14

to compel to secure compliance from defendants, several of which resulted in sanctions against defendants, and numerous depositions within the United States and in several foreign countries. These and related efforts have resulted in an unprecedented release of evidence relating to the sources of support for al Qaeda and the 9/11 attacks, including the declassification of over 4,000 thousand pages of long-secret CIA, FBI, and other U.S. government intelligence and law enforcement documents, as well as lobbying efforts resulting in the enactment in 2016 of the Justice Against Sponsors of Terrorism Act ("JASTA") which enhanced the legal rights and remedies available to the 9/11 MDL plaintiffs as a whole, including Appellees' clients. Appellants also worked in earnest on a range of essential case management initiatives and obligations, such as negotiating case management procedures and protocols with the defendants and preparing related submissions to the district court, preparing agendas for discovery and case management conferences, developing procedures to harmonize pleadings in the 9/11 MDL, and integrating new plaintiffs and claims in the 9/11 MDL. The prosecution of the claims also has required multiple appeals, along with three petitions for writs of certiorari to the United States Supreme Court, two of which resulted in requests for the views of the Solicitor General.[6] Cozen O'Connor (with the support of its co-counsel,

---

[6] *See, e.g.*, Petition for a Writ of Certiorari, U.S. Supreme Court, Case No. 13-318, September 9, 2013; Petition for a Writ of Certiorari, U.S. Supreme Court, Case No. 08-640, November 12, 2008; Brief for Plaintiffs-Appellants, U.S. Court of Appeals

Appellants Sidley Austin and Ellis George) has had substantial, and quite often primary, involvement in virtually every litigation initiative described above.

## II.    The *Havlish* Plaintiffs' Applications for a Common Benefit Fund

The present appeal arises from final orders of the district court, which improperly refused to establish any common benefit fund structure to provide compensation for the attorneys who performed the massive common benefit work described above, despite recoveries in favor of the plaintiffs collectively represented by Appellees of several billion dollars, resulting in fees of several hundred millions of dollars. Cozen O'Connor's clients are ineligible to participate in the Congressional fund that has produced those recoveries, and therefore the firm has not received any resulting fees. The district court's orders have thus left Cozen O'Connor without compensation from the multi-billion dollar recoveries for its work that produced a common benefit for all 9/11 plaintiffs, and allowed the benefiting attorneys to retain their contingency fees without compensating other counsel who have borne much of the burden and expense of performing work required to prosecute the 9/11 MDL for their clients. The motion practice leading to the district

---

for the 2d Circuit, Case No. 18-1201-cv(L), September 7, 2018; Brief for Plaintiffs-Appellants, U.S. Court of Appeals for the 2d Circuit, Case No. 15-3426-cv(L), March 10, 2016; Plaintiffs-Appellants' Opening Brief, U.S. Court of Appeals for the 2d Circuit, Case No. 12-1318-cv(L), July 16, 2012; Appellants' Consolidated Brief with Respect to Personal Jurisdiction, U.S. Court of Appeals for the 2d Circuit, Case No. 11-3294-cv(L), January 20, 2012.

court's orders declining to establish any common benefit fund in relation to the contingency fees received by Appellees dates back several years, as summarized below.

In 2008, a small subset of plaintiffs in the 9/11 MDL (the "*Havlish* plaintiffs") pursued default judgment proceedings against the Islamic Republic of Iran, which had not appeared in the litigation. (ECF Nos. 2124, 2125). Counsel for the *Havlish* plaintiffs did not coordinate their work related to the default with the court-appointed PECs. The *Havlish* plaintiffs' pursuit of a liability default judgment against Iran was one limited aspect of the work necessary to prosecute the claims of the 9/11 MDL plaintiffs, and the effort was made at a time when Cozen O'Connor and other committee members were deeply occupied with time-sensitive work necessary to prosecute claims against dozens of defendants who had appeared and were aggressively contesting the claims against them, and were advancing the 9/11 MDL on several other significant fronts. (ECF No. 6522 at 2-4). The *Havlish* plaintiffs provided a presentation of evidence of Iran's liability to the district court at an evidentiary hearing on December 15, 2011. During the uncontested hearing, no witnesses were called to provide testimony to the district court, and the *Havlish* attorneys devoted most of their time to summarizing the evidence submitted via affidavits and other publicly available information.

On December 22, 2011, the Honorable George B. Daniels entered a default judgment on behalf of the *Havlish* plaintiffs against Iran. (ECF No. 2516). On August 31, 2015, Judge Daniels entered default judgments against Iran on behalf of plaintiffs represented by Appellants and Appellees in the *Ashton, Federal Insurance,* and *O'Neill* actions. (ECF Nos. 3020-22). The district court issued similar judgments to the *Burnett* plaintiffs on January 31, 2017, and to other groups of plaintiffs thereafter. (U.S.D.C. S.D.N.Y. No. 17-cv-5306, Dkt. No. 66).

In 2016, attorneys representing the *Havlish* plaintiffs moved for an order creating a common benefit fund to compensate and reimburse those attorneys for services performed in obtaining a non-adversarial default judgment against Iran. (ECF No. 3235-3236). The district court initially declined to establish a common benefit fund on the basis that the creation of a fund was premature because, at that time, there were no recoveries arising from the Iran judgments or any source in the litigation. (ECF No. 3322).

In 2018, attorneys representing the *Havlish* plaintiffs renewed the motion to create a common benefit fund in response to legislation expanding the recoveries available pursuant to the United States Victims of State Sponsored Terrorism Fund ("USVSSTF"). (ECF No. 4289). The USVSSTF is a government fund that provides compensation to certain terrorism victims holding judgments against designed State Sponsors of Terrorism, such as Iran. As enacted in 2015, the legislation relating to

the USVSSTF authorized compensation to 9/11 MDL plaintiffs who are U.S. natural persons, holding judgments against Iran, to the extent they had not previously received awards from the 9/11 Victim Compensation Fund ("VCF"). *See* 34 U.S.C. § 20144: JUSTICE FOR UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM ACT (formerly codified as 42 U.S.C. § 10609). The statute was thereafter amended to authorize compensation in favor of all 9/11 plaintiffs who are U.S. natural persons and hold judgments against Iran, and then amended again to provide a one-time $2.56 billion catch-up payment in favor of VCF beneficiaries who had been excluded from the first several rounds of USVSSTF payments. See UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND CLARIFICATION ACT, P.L. 116-69, Title VII, § 1701 (c) (Jan. 2, 2019); CONSOLIDATED APPROPRIATIONS ACT, P.L. 117-328, 2023 (enacted Dec. 29, 2022) (now codified at 34 U.S.C. § 20144). To date, the USVSSTF has distributed recoveries through four tranches, for total distributions in favor of eligible 9/11 plaintiffs in excess of $4 billion. (ECF No. 9114). Those distributions resulted in estimated attorneys' fees in excess of $615 million, based on the applicable fee cap. While some of the attorneys reaping the benefits of these fees flowing from the representation of 9/11 plaintiffs have made significant investments in advancing the 9/11 MDL, others have not.

19

A number of the 9/11 plaintiffs receiving recoveries from the USVSSTF sued Iran only after the creation of the USVSSTF. The attorneys representing those plaintiffs leveraged existing attorney-client relationships fostered in the broader 9/11 MDL to file suit against Iran and take advantage of the massive opportunities presented by the USVSSTF. Appellants performed much of the work that allowed counsel to sustain their client relationships during the fifteen years of litigation prior to the creation of the USVSSTF, and which put Appellees in a position to access and benefit from the fund.

In response to the *Havlish* plaintiffs' renewed motion to establish a common benefit fund, Kreindler & Kreindler and Motley Rice, a subset of Appellees here, joined with Appellant Cozen O'Connor to file a consolidated brief opposing the application of the *Havlish* plaintiffs to create a purported "common" fund to benefit only *Havlish* counsel for work done exclusively for their clients. (ECF No. 4407). In the consolidated brief, counsel collectively argued that any common benefit fund would necessarily require consideration of all work performed to benefit the plaintiffs in the 9/11 MDL:

> If the Court is inclined at all to entertain [the *Havlish*] fee demand . . . the Court should give full consideration to the common benefit work of the entirety of the PECs. Many of the PECs' clients' participation in this MDL was dependent upon their counsel seeking accountability for *all* defendants who were involved in providing support to Al-Qaeda and the 9/11 attacks, not just Iran. The work and funding invested by counsel for those plaintiffs to fulfill and maintain that required scope of representation dwarfs even the exaggerated and undocumented

investment claimed by *Havlish* counsel in support of their motion. The entire investment by Respondents in representing their respective clients in the MDL would need to be considered in evaluating any fee request.

(ECF No. 4407 at 21). This argument explained that the full scope of work undertaken by MDL leadership was a requirement and precondition for receiving contingency fees from any source, and had to be addressed in relation to any common benefit fund. It also showed that attorneys receiving fees from USVSSTF recoveries would be unjustly enriched if they were allowed to retain those contingency fees, without compensating attorneys who had done required work on behalf of their clients.

## III.    The District Court's Establishment of a Common Benefit Fund

On September 30, 2019, Magistrate Judge Netburn entered an Opinion & Order granting in part the *Havlish* plaintiffs' request for a common benefit fund. (SPA1 – SPA14). Judge Netburn ruled that while the recoveries flowing from the USVSSTF warranted the creation of a common benefit fund, that fund would apply solely to work associated with obtaining the non-adversarial default against Iran. Judge Netburn stated that creating a common benefit fund to compensate the *Havlish* counsel for that task would "promote[] the Court's ability to manage the litigation by compensating attorneys who perform significant legal services in favor of all Plaintiffs", (SPA-11), but deemed it premature to consider a common benefit fee for work performed litigating claims against other defendants in the 9/11 MDL. Judge

21

Netburn directed the parties to meet and confer to address the supporting documentation that would allow the district court to award a common benefit fee. (SPA-12 – SPA-13). The district court further directed the Clerk of the Court to terminate the motions relating to the *Havlish* plaintiffs' application for the creation of a common benefit fund at ECF Nos. 4289 and 4291. (SPA-13).

On behalf of the PEC for Wrongful Death and Personal Injury Plaintiffs and other plaintiffs identified in the motion, Motley Rice and Kreindler & Kreindler sought reconsideration of the September 30, 2019 Opinion & Order, arguing that it was unprecedented and improper for the court to permit recovery only for a subset of common benefit work. (ECF No. 5361). Those firms emphasized that "the Court should rule that *all* common-benefit work in the MDL, not just work involving claims against Iran, is potentially eligible for a CBF award; otherwise, the Court would be incentivizing attorneys in an MDL to pursue the 'low-hanging fruit' . . . and discouraging MDL attorneys from taking on the more difficult tasks for which a favorable outcome is far less certain." (ECF No. 5361 at 7) (emphasis in original).

Cozen O'Connor similarly sought reconsideration of the district court's finding that a common benefit fund should apply only to *Havlish* counsel, and should only compensate attorneys for time and investments spent litigating claims against Iran. (ECF No. 5359). On behalf of the PEC for Commercial Plaintiffs, Cozen O'Connor advocated for a common benefit fund structure to benefit the committee

members for their work on the 9/11 MDL as a whole. (ECF No. 5359 at 8-10). Cozen O'Connor further argued that where committee members are discharging obligations assumed under other attorneys' representation agreements, equitable principles require a more broadly applicable common benefit fund. "By establishing a common benefit fund for the benefit of all committee members based on their contributions to the MDL as a whole, the Court will merely be avoiding the unjust enrichment of counsel who are disproportionately benefitting from recoveries from the MDL and providing *quantum meruit* compensation for members of the committees who have managed this MDL." (ECF No. 5359 at 12). Cozen O'Connor also requested that the district court implement a framework similar to that used in other complex litigation, and appoint a special master to administer the common benefit fund for the benefit of the committee members, based on their relative contributions. (ECF No. 5359 at 13).

On September 30, 2020, Judge Netburn entered an Opinion & Order denying the motions for reconsideration. (SPA-15 – SPA-26). The district court held that the creation of a common benefit fund applicable solely to the work associated with the non-adversarial default judgment against Iran was appropriate based on the fact that the claims in the 9/11 MDL are proceeding on different procedural timelines. (SPA-18). The court premised this portion of its ruling on a fictional divide of its own making, pursuant to which it claimed that fees for the "Iran cases" and the "Saudi

cases" could not be addressed simultaneously. (SPA-21). The district court declined to establish a common benefit fund applicable to common benefit work other than the Iran default. Judge Netburn further predicated her decision on the notion that the availability of a common benefit fee "presumes the success of the litigation," (SPA-19), a principle she interpreted as limiting common benefit awards to specific tasks that directly produce recoveries, and excluding all other work required to represent the interests of the 9/11 MDL plaintiffs.

In the September 30, 2020 Order, the district court reaffirmed that the timing was appropriate to "assess a common benefit fee to compensate those lawyers who worked for the common benefit of all plaintiffs in pursuit of the claims against Iran." (SPA-24). The district court directed counsel for the *Havlish* plaintiffs and the Appellees to file sworn declarations and supporting evidence setting forth the work performed in securing the original default judgment against Iran, as well as documentation detailing their distributions from the USVSSTF. (SPA-24). The district court further held that "[t]o the extent that Responding or <u>Federal</u> Plaintiffs [certain Appellees and Appellants here] ask the Court to set aside money now from USVSST Fund recoveries for awards on behalf of non-Iran related work, that request is not timely and is denied." (SPA-21).

Appellant Cozen O'Connor and Appellees Motley Rice, Kreindler & Kreindler, and Anderson Kill separately filed objections to Magistrate Judge

Netburn's September 30, 2020 Opinion & Order. (ECF Nos. 6520, 6522). Cozen O'Connor asserted that although it did not object to the district court's creation of a common benefit fund, there were two aspects of the September 30, 2020 Opinion & Order that merited objections. (ECF No. 6520 at 2). First, Judge Netburn improperly limited the scope of the common benefit fund by formulating a structure designed to compensate counsel only for the efforts undertaken in successfully obtaining the default judgment against Iran. (ECF No. 6520 at 5-11). Second, the *Federal Insurance* plaintiffs objected to the district court's artificial construct that the 9/11 MDL consists of "Iran cases" and "Saudi cases" and that a common benefit fee is unavailable for cases that are ongoing, or for the full scope of necessary work performed to benefit all 9/11 MDL plaintiffs. (ECF No. 6520 at 12-13).

Appellees, for their part, continued to object to the district court's creation of the common benefit fund, arguing that the USVSSTF is outside the scope of the authority of the district court in the 9/11 MDL and also that the district court cannot create a common benefit fund that relates only to a single defendant in the 9/11 MDL. (ECF No. 6522 at 8-15). In this regard, Appellees asserted that the committee members prosecuting the 9/11 MDL are to be compensated for their work on behalf of the 9/11 plaintiffs, as "[i]t is the common work performed in the MDL, not the work concerning one individual defendant, that provides the court with managerial authority to establish a Common Benefit Fund." (ECF No. 6522 at 13). Appellees

argued that "[i]t is therefore the work, effort, time and expense relating to *all* of the 'activities performed and expenses incurred by counsel that relate to matters common to *all* claimants' that must be taken into consideration in establishing [a] CBF and that imbue a court with the authority to shift fees amongst various counsel by means of that CBF." (ECF No. 6522 at 14) (emphasis in original). Appellees further asserted that, even if the district court approves the establishment of a common benefit fund, a common benefit fee cannot be determined until the conclusion of the litigation, at which point the relative efforts and contributions of all attorneys can be assessed. (ECF No. 6522 at 16-17).

On August 31, 2023, Judge Daniels issued a Memorandum Decision and Order overruling the objections to Judge Netburn's orders. (SPA-27 – SPA-33). Judge Daniels carried forward the prior errors and ruled that it was appropriate to establish a common benefit fund to provide compensation solely for "Iran-related litigation expenses" in the 9/11 MDL. (SPA-31). Judge Daniels' order also misstated Cozen O'Connor's objection to suggest that Cozen O'Connor had argued the common benefit fund was premature, when the objection itself argues the exact opposite. (SPA-31), *compare* ECF No. 6520 at 2) ("The *Federal* Plaintiffs do not object to the Court's creation of a common benefit fund"). Judge Daniels again directed the parties to submit documentation to assist the district court in ascertaining the proper size of the common benefit fund and distribution parameters.

IV.  **The District Court's Orders Abandoning Any Common Benefit Fund Process Entirely and Denying Appellants Any Means to Obtain Compensation for Common Benefit Work**

Although the district court's August 31, 2023 Order directed that it was necessary to establish a common benefit fund from Appellees' fee recoveries – albeit one improperly limited to providing a windfall success fee to the *Havlish* counsel – the district court thereafter reversed course and abandoned any common benefit fund process altogether. Instead, the district court held that Appellees and *Havlish* counsel could extinguish the common benefit fund process it had previously directed by entering into private settlements, through which Appellees presumably made some one-time payment to *Havlish* counsel. These final orders conclusively established that Appellants are entitled to no compensation for their common benefit work from Appellees' USVSSTF fees. These orders also eliminated any restriction on the distribution of those fees, meaning that there is no longer any protection in place to ensure that they will be available to fund an appropriate common benefit fund in the future.

This reversal of course and abandonment of any common benefit fund process was set in motion at a hearing before Judge Netburn on September 6, 2023, set to discuss the timeline for the submissions ordered by the district court. At that hearing, a subgroup of firms advised that they were interested in pursuing settlement. (ECF No. 9318). This group included the Motley Rice, Kreindler & Kreindler, Anderson

Kill, and Baumeister & Samuels firms – all of which had received substantial fees from the USVSSTF – on the one hand, and the *Havlish* counsel, on the other. The district court thereafter issued an Order advising that attorneys for plaintiffs agreed to a settlement conference before Magistrate Judge Parker. (ECF No. 9333).[7]

Shortly before the scheduled settlement conference, on December 8, 2023, Appellees Motley Rice, Kreindler & Kreindler, Anderson Kill, and Speiser Krause wrote to Judge Netburn and advised that those firms "have resolved all outstanding issues for their firms and their clients relating to the *Havlish* Plaintiff Counsels' Motion for Common Benefit Fund" in the 9/11 MDL. (ECF No. 9460). On December 12, 2023, the district court entered an Order in the 9/11 MDL acknowledging the "private settlement agreement" between counsel for the *Havlish* plaintiffs and Motley Rice, Kreindler & Kreindler, Anderson Kill, and Speiser Krause and "dismissing with prejudice" the *Havlish* plaintiffs' renewed motion for an order creating a common benefit fund as against those firms, even though the

---

[7] By letter dated October 19, 2023, counsel for the *Havlish* plaintiffs wrote to the district court on behalf of themselves and a subset of unidentified firms, and requested an *ex parte* conference to discuss unspecified issues relating to the settlement discussions. (ECF No. 9384). In response, Cozen O'Connor contacted attorneys at Anderson Kill and Motley Rice to request additional information and to emphasize that the common benefit fund issues could not be resolved without addressing Appellants' preserved interests; Cozen O'Connor also advised the district court that it had not been included in any of the resolution discussions, despite having an interest in the common benefit fund issues. Cozen O'Connor also advised that resolution of the common benefit fund issues would not be achievable if it does not address the interests of all relevant parties. (ECF No. 9387).

district court previously ordered that same motion terminated when it established the common benefit fund. (SPA-34 – SPA-35). On December 22, 2023, the district court entered a parallel order "dismissing with prejudice" the motion as against Baumeister & Samuels, with whom counsel for the *Havlish* plaintiffs also reached a "private settlement agreement." (SPA-36).

The district court's December 2023 Orders eliminated Appellants' rights arising under the district court's prior orders for the creation of a common benefit fund, from any fees Appellees had received from the USVSSTF. The district court also improperly dismissed a motion that it had already terminated when it ordered the establishment of the common benefit fund. (SPA-13). By condoning a fractional settlement that ostensibly immunizes the settling firms from exposure to common benefit fund contributions from fees of their USVSSTF recoveries, the district court denied Appellants any remedy with respect to their interests in a common benefit fund stemming from USVSSTF distributions. These orders also made final the determination that attorneys that performed common benefit work in the 9/11 MDL will receive zero compensation from Appellees' fees from the Congressionally created fund, despite the fact that the 9/11 MDL has been ongoing for 20 years, has required massive investments of time and costs to perform required common benefit work, and remains ongoing and will require further investments going forward (if the plaintiffs are to be properly represented).

## SUMMARY OF ARGUMENT

The district court erred both (1) in failing to establish a common benefit fund that corresponds to the full scope and operation of the 9/11 MDL for the common benefit of all the 9/11 plaintiffs with respect to all their claims, and (2) in its underlying reasoning that any common benefit fund is appropriate only for allocating fees arising from attorney efforts directly bearing on securing default judgments against a single defendant, Iran.

As elaborated below, the district court's treatment of common benefit fund issues reflects three basic legal errors. First, the district court disregarded the need to compensate the full range of work, and to construct the related financial incentives for lead attorneys in particular, required to advance all the interests of all the 9/11 plaintiffs in complex litigation and especially in an MDL such as the one here. If there is no such common benefit fund established at least at the outset of plaintiff recoveries related to the full scope of such litigation, then attorneys will inevitably not perform the work less clearly related to immediate and certain financial recoveries. They will rush to work on the most certain and least costly claims and devote resources to those plaintiffs. Divisions among attorneys and uncoordinated and incomplete efforts would inevitably arise, disserving both many of the MDL plaintiffs and the court itself. To advance the interests of all MDL plaintiffs and to ensure the efficient and effective management of the MDL proceeding as a whole,

30

that common benefit fund must encompass all efforts to advance the interests of MDL plaintiffs and use that broader context to allocate fees arising from any or all recoveries by any of those plaintiffs.

Second, the district court's reasoning regarding the type of common benefit fund that would be appropriate departed from these established legal principles in two particularly pernicious and unjustified respects. The court initially indicated that a common benefit fund would be appropriate only for efforts to recover on claims directed against a single defendant, Iran. That determination undermined all the incentives for attorneys to serve all 9/11 plaintiffs and all their claims that any common benefit is designed to create. Indeed, even *Appellees* agreed with this view in an earlier phase of the dispute over a common benefit fund. The court compounded this misstep by defining and analyzing the relevant attorney efforts to be rewarded as only those directly related to securing default judgments against Iran. This focus ignored and failed to compensate the broader efforts that advanced the interests of the recovering plaintiffs and the interests of their attorneys, including with respect to securing recoveries and related fees for the particular Iranian judgments. And, the district court's rationales for basing any common benefit on a subset of claims, defined by defendant or the timeliness of recovery, only confirms that this piecemeal approach would destroy the incentives and efficient and fair

operation of the MDL litigation that a properly constructed common benefit fund is designed to achieve.

Third, the district court's approach failed to honor and implement the basic legal requirements to prevent unjust enrichment that underpin the proper establishment and purpose of common benefit funds. Each attorney is responsible for pursuing all the claims of its clients and, in an MDL, benefits from both the efforts of other attorneys who advance those claims (including claims not immediately leading to recoveries) and who undertake the burdens of managing the litigation and undertaking discovery. Here, the 9/11 plaintiffs who recovered on their judgments against Iran also asserted claims against various other defendants in the 9/11 MDL, and their attorneys who received contingent fees had and have obligations to diligently prosecute those claims. Appellants have performed work required to discharge those obligations, secured a range of litigation benefits and advances for Appellees' clients, and thus positioned Appellees to retain their client relationships and recover fees related to their clients' judgments against Iran. However, the district court's approach precluded sharing or allocation of those fees, enabling Appellees to secure an unjustified windfall and denying Appellants any fees related to their work on behalf of the MDL plaintiffs as a whole, including Appellees' clients.

For all these reasons, the district court's orders should be vacated and the matter remanded to the district court for the fashioning and implementation of an appropriate common benefit fund designed to reflect the full scope and operation of the 9/11 MDL.

## STANDARD OF REVIEW

"The Second Circuit reviews a district court's decision to grant or deny an award of attorneys' fees for abuse of discretion, reviewing de novo any rulings of law." *See Fresno Cnty. Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 67 (2d Cir. 2019) (quoting *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.*, 814 F.3d 652, 656 (2d Cir. 2016)); *see also Wilson v. FBI*, 91 F.4th 595, 598 (2d Cir. 2024) ("Arguments that a district court committed legal error in denying a fee award are reviewed de novo"); *Baker v. Health Mgmt. Sys.,* 264 F.3d 144, 149 (2d Cir. 2001) ("where an appellant's contention on appeal regarding an award of attorneys' fees is that the district court made an error of law in granting or denying such an award, the district court's rulings of law are reviewed de novo").

Here, the district court misapplied the law by refusing to create a common benefit fund from Appellees' USVSSTF fee recoveries resulting from the litigation. The district court also erred in dismissing the motions relating to the establishment of the common benefit fund, thereby foreclosing Appellants' rights to claim a

common benefit fee. Therefore, this Court should review the district court's Orders *de novo*.

## ARGUMENT

### I. The District Court Erred in Failing to Establish a Common Benefit Fund to Allocate Recovery of Fees Arising from All 9/11 MDL Claims

The district court contravened basic equitable principles governing the establishment and operation of common benefit funds when it declined to establish a fund compensating lead attorneys for efforts to advance the interests of all plaintiffs and all claims encompassed in the 9/11 MDL, including but not limited to the Iran claims.

The important role of lead attorneys in advancing the interests of all 9/11 plaintiffs and assisting the efficient and fair judicial administration of the case require that a common benefit fund be established that provides them with appropriate incentives to act for the common benefit of all MDL plaintiffs to advance all their claims. In complex multidistrict litigation, the MDL court typically establishes procedures at an early stage by "which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients with respect to specified aspects of the litigation." MANUAL FOR COMPLEX LITIGATION, FOURTH § 10.22 (2004). Designated counsel come in many varieties and fill many roles, all of which are vital to the efficiency of complex multidistrict litigation. *See In re Zyprexa Prods. Liab. Litig.*, 594 F.3d at 130 (Kaplan, D.J., concurring) ("[T]he

34

efficient handling of [MDL and class action] cases demands a similar approach to case management. District courts typically appoint a lead counsel or plaintiffs' steering committee to coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic"); *In re Air Crash Disaster of Fla. Everglades on Dec. 19, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977) (district courts have inherent authority "to bring management power to bear upon massive and complex litigation to prevent [the litigation] from monopolizing the services of the court to the exclusion of other litigants").

This important function of lead attorneys requires that they be compensated in accordance with the full scope of recovery arising for all MDL claimants. As the Fifth Circuit has explained, "if lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired for them at no additional compensation." *Florida Everglades*, 549 F.2d at 1016. Likewise, "[t]he desirability—indeed, the compelling need—to have pretrial proceedings managed or at least coordinated by lead counsel or a steering or executive committee demands the existence of a source of compensation for their efforts on behalf of all." *See In re Zyprexa Prods. Liab. Litig.*, 594 F.3d at 130 (Kaplan, D.J., concurring); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) (citation omitted) ("District courts have exercised this power to establish fee

35

structures designed to compensate committee members for their work on behalf of all plaintiffs involved in [] consolidated litigation."). And according to another court in this Circuit, "the expectation of [common benefit fund] payments is critical to incentivize counsel to do such work in the first place." *In re GM LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 190 (S.D.N.Y. Aug. 7, 2020). Even the court below acknowledged that the creation of a common benefit fund "promotes the Court's ability to manage the litigation by compensating attorneys who perform significant legal services in favor of all Plaintiffs" (SPA-11), though it then failed to act consistently with that observation.

Accordingly, this Court and federal courts across the country have held that the appropriate scope of a common benefit fund encompasses all work done for the common benefit of all plaintiffs in the MDL. *See Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (noting district court's inherent authority to provide for payment of liaison counsel carrying out obligations as directed by court); *see also In re Ethicon, Inc. Power Morcellator Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 54017, *18 (D. Kan. Apr. 21, 2016) (creating common benefit fund to compensate for "substantial common benefit work," without restriction to any specific recovery); *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 767 (E.D. La. 2011) (establishing procedures to allocate attorneys' fees among common benefit attorneys based on submissions addressing relative contributions to

36

litigation); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17535, *20-21 (D. Minn. Mar. 7, 2008) (holding it is "now commonly accepted in complex multiparty litigation that a court can and in fact should appoint a committee such as the [PEC] to coordinate the litigation and ease the administrative burden on the court," and that courts should ensure that such attorneys are "compensate[d] fairly" "to promote efficiencies and to maximize the economies of scale" (citation omitted)).

A crucial aspect of establishing the appropriate incentives for counsel to act on behalf of all MDL plaintiffs and effectively support the court is that the common benefit fund be established early in the proceeding, and certainly once initial recoveries by MDL plaintiffs begin to be secured. Here, that latest appropriate time arose when Congress expanded the USVSSTF and it became clear that substantial recoveries would flow as a result of the expanded legislation to certain of the 9/11 plaintiffs and their counsel. Accordingly, under the district court's approach, leadership counsel will fail to be compensated for the success of certain MDL plaintiffs' claims and will further lack any assurance that they will benefit from future recoveries and associated attorneys' fees. This Court has already counseled district courts to establish an appropriately structured common benefit fund early in MDL proceedings. It has observed that the Manual for Complex Litigation "suggests that when appointing liaison counsel, the appointing court should 'determine the

method of compensation, specify the records to be kept, and establish the arrangements for their compensation, including setting up a fund to which designated parties should contribute in specified proportions,'" and it further advised that "district courts would do well to heed these recommendations." *Marion S. Mishkin L. Off.*, 767 F.3d at 151; *see also* DUKE LAW CENTER FOR JUDICIAL STUDIES, Guidelines and Best Practices for Large and Mass-Tort MDLs (2d ed. 2018) ("Guidelines and Best Practices") at 65 (recommending courts establish framework governing compensation of counsel at outset of litigation, before it is possible to know which undertakings will result in recoveries).

This ex ante approach averts any complications associated with cases proceeding on different timelines; the common benefit fund order often imposes a "set-aside" of any recovery, maintained in an escrow account, to be distributed based on counsels' submissions in accordance with established criteria. See Guidelines and Best Practices at 65 ("While some courts maintain that it would be premature to establish a common benefit fund early in the litigation . . . the prevailing view of courts and the Manual of Complex Litigation is that '[e]ven if no common benefit compensation had yet been earned, there [is] a need to put a holdback method into place promptly.'") (citing *In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 267 (E.D.N.Y. 2006)).

In stark contrast to the district court's determination not to establish a common benefit fund, which virtually stands alone in the federal courts, numerous complex litigation proceedings are available to serve as models for establishing a common benefit fund at an early stage of litigation to ensure that lead counsel are compensated for the success of any claims related to the MDL. *See, e.g., In re: National Prescription Opiate Litigation,* No. 1:17-md-2804, U.S.D.C. N.D. Ohio, ECF No. 4428 at 2-3 ("Throughout the course of these MDL proceedings, the Court has issued a series of Orders designed to ensure that leadership counsel appointed by this Court, and others who perform common benefit work, are incentivized to do so with reasonable expectation of reimbursement and compensation for their efforts. The Court has always anticipated that a portion of counsel's remuneration will include reasonable assessments levied upon judgments and settlements that rely upon common benefit work"); *In re Bard IVC Filters Prod. Liab. Litig.,* 81 F.4th 897, 902-03 (9th Cir. 2023) (detailing procedural history relating to common benefit fund and explaining that it was put in place a few months after district court appointed lead counsel; court ordered a holdback on recoveries, and established criteria pursuant to which counsel could dispute allocation of fees before an appointed special master as cases were dismissed, transferred, and settled); *In re: Davol, Inc./C.R. Bard, Inc., Polypropyelene Hernia Mesh Prods. Liab. Litig.,* No.

2:18-md-02846, U.S.D.C. S.D. Ohio, ECF No. 70 (establishing common benefit fund and criteria for submissions at early stage of litigation).

The district court's departure from these basic principles is especially inappropriate in this case. For more than two decades, the Appellant lead attorneys have been expending many thousands of hours of time and providing millions of dollars in costs with the expectation that they will be compensated if and when any of the other attorneys representing 9/11 plaintiffs secure fees based on the success of their clients' claims in the 9/11 MDL. Their role and the scope of this particular MDL require that they continue to devote significant effort and expenditures to pursue the remaining other claims of those same plaintiffs as well as the claims of other plaintiffs, all directed against a range of defendants other than Iran. Yet, under the district court's rulings, there is no common benefit fund to compensate them for their efforts from the massive fee recoveries Appellees have realized, and the court's rulings instead indicate that they will never be able to share in the benefits that have accrued to certain 9/11 plaintiffs on their successful recoveries and may be denied any compensation for future successes by other plaintiffs. Instead, various 9/11 plaintiffs' attorneys are compensated, and have been compensated, if they focus principally or only on distinct claims by certain plaintiffs that are especially likely to result in recoveries and related fees. This result produces an incentive to avoid the hard work of pursuing more difficult claims, of conducting discovery that may

benefit MDL plaintiffs generally, and of undertaking the administrative tasks necessary to assist the court and advance the interests of all MDL plaintiffs. The resulting disharmonies among attorneys and resulting incentives that disserve the full scope of MDL plaintiffs and the court could not be more contrary to the equitable purpose and appropriate operation of common benefit funds.

## II. The District Court Improperly Limited Any Common Benefit Fund to Allocating Fees Based on Direct Assistance to Successful Claims of Particular 9/11 Plaintiffs

The district court's reasoning for when a common benefit fund is appropriate confirms the inconsistency between its action and the legal requirements and objectives of a common benefit fund. The court initially established a common benefit fund only for recoveries and fees related to certain 9/11 plaintiffs' claims against Iran that had led to recoveries, and limited the allocation of those fees to only attorney efforts directly resulting in those recoveries. (SPA-27 – SPA-33). Once that limited set of attorneys reached a private settlement allocating fees among themselves, the court found that no common benefit fund was needed at all. (SPA-34 – SPA-36). It declined to establish a broader common benefit fund aligned with the full scope of the 9/11 plaintiffs' claims and attorney efforts on their behalf, and it declined to treat even the lead attorneys' efforts directly benefiting the recovering plaintiffs (both for their successful Iran claims and their pending claims against other

defendants) as relevant to any allocation of the fees that other 9/11 MDL attorneys had received as a result of the Iran claims. *Id.*

This approach to establishing common benefit funds is directly contrary to the rationale and scope of the 9/11 MDL and to the creation of appropriate incentives and burden-sharing that common benefit funds are designed to achieve. As described above, *see* supra at pp. 34-41, the purpose of a properly constructed common benefit fund is to compensate especially the lead attorneys in complex litigation such as MDLs for advancing the interests of all MDL plaintiffs, by sharing attorneys' fees for any recoveries with those attorneys who advance the interests of the litigation as a whole and the interests of plaintiffs who may have more difficult, less timely, or more risky claims. The 9/11 MDL extended to a broad range of claims against defendants other than Iran. *See supra* pp. 9-10, n. 2-4. Predicating common benefit funds on subsets of those claims, especially those most likely to produce recoveries, destroys these incentives and undermines the structure and operation of the MDL committees. The district court's approach creates exactly the attorney gold rush toward the most valuable claims that the MDL structure and a common benefit fund's operation are designed to avoid.

Appellees, before they struck a deal with the *Havlish* attorneys that mooted the effort to secure a common benefit fund, agreed with these principles and used them to criticize an Iran-focused common benefit fund that did not take into account

the lead attorneys' work on behalf of the 9/11 plaintiffs as a whole. Those Appellees that sought reconsideration of the district court's initial rulings specifically raised the "inequities of this piecemeal approach" and argued that, "even if the funds for the CBF are derived entirely from legal fees earned on recoveries relating to judgments against Iran, all counsel who have done common-benefit work in this MDL must be eligible to apply for common benefit fees." (ECF No. 5361 at 14; ECF No. 6522 at 15). Appellees further asserted that "[i]t would be contrary to the entire common-benefit doctrine were only those attorneys whose common-benefit efforts proved successful against a single (defaulting) defendant entitled to compensation. If this were the case, there would be no incentive for counsel to take on the more difficult, and riskier, common-benefit assignments when only the common-benefit work that 'paid off' resulted in compensation." (ECF No. 6522 at 15). Appellees argued that, in creating a common benefit fund applicable only to the Iran judgment and allocating fees based only on work related directly to securing those judgments, the district court "failed to recognize that a court's authority in creating a CBF is premised on the need to compensate the *entire* leadership structure of a complex MDL to promote just and efficient litigation in the entire case – *not* to reward only one small group of attorneys." (ECF No. 6522 at 16) (emphasis in original).

Even if isolating a subset of plaintiffs and attorneys as distinct beneficiaries of an Iran-claim focused common benefit fund were somehow proper, the district

court ignored the common benefit that Appellants' efforts provided to Appellees' clients and to Appellees themselves, including with respect to the Iran claims. Crucially, Appellees' clients are also asserting claims against the Kingdom of Saudi Arabia, affiliated persons and entities, regional financial entities, Sudan, and other defendants. *See supra* pp. 9-10, n. 2-4. Appellants and other committee members have been spending decades advancing those aspects of the case on behalf of all 9/11 plaintiffs, as contemplated by CMO3, including Appellees' clients and the *Havlish* plaintiffs. *See supra* at pp. 14-16. That basic burden and reward sharing is the central component to any common benefit fund, and is particularly required here where Appellants assisted in discharging Appellees' obligations to their clients who recovered on their Iran claims and provided direct benefits to those clients in relation to their other claims.

Even with respect to realizing recoveries based on the Iran judgments, that work by Appellants and other committee members was highly relevant. The Iran claims, like those against other defendants, asserted similar grounds for liability based on the common nexus to al Qaeda's attacks and al Qaeda's deployment of material support it received from various sources. *See supra* pp. 9-10, n. 2-4. Developing evidence and litigating those claims increased Congressional support for the victims of the 9/11 attacks, contributing to the creation of the USVSSTF in a

manner that enabled the Iranian judgment holders to secure such substantial recoveries.

In addition, the ongoing and massive scope of work undertaken by Appellants also sustained the client relationships that in large part enabled Appellees to obtain the benefit of their clients' recoveries pursuant to the USVSSTF. Had the overall 9/11 MDL dissipated years before the USVSSTF funds became available to the 9/11 plaintiffs in 2019, or had Appellees' clients perceived that their attorneys were unduly focused on the Iran judgments without the other claims advancing, Appellees would have been unlikely to receive fees related to enforcing those judgments. For all these reasons, the fees that Appellees have collected and will continue to collect from the USVSSTF result, in large part, from the leveraging of attorney-client relationships that were established over decades of contentious litigation, and which exist because of efforts with no direct nexus to the default judgment against Iran. *Compare Amorin v. Taishan Gypsum Co.,* 861 F. App'x 730, 735 (11th Cir. 2021) (permitting common benefit fund recovery to class counsel where individual counsel "benefitted from the decade of foundational work that Class Counsel exerted in this groundbreaking MDL").

The district court's rationales for predicating any common benefit fund on only Iran claims and only efforts directly resulting in those recoveries do not withstand scrutiny, and only confirm that the court departed from the basic equitable

45

principles governing common benefit funds. The district court premised its ruling on a supposed distinction between "Iran claims" and "Saudi claims, *see* SPA-21, yet the 9/11 MDL is a single MDL, consolidated for pretrial proceedings. *See supra* p. 12. The district court appointed a single steering committee that operates through two PECs to guide the litigation as a whole, in furtherance of the district court's interest in managing a coordinated approach for pretrial proceedings involving common legal and factual issues on behalf of all 9/11 MDL plaintiffs. *See id.* And, as noted above, the Iran claims and the claims against other defendants rest on the legal theories and evidence associated with the actions of al Qaeda in deploying support from various sources to attack the United States. *See supra* pp. 9-10, n. 2-4. In addition, there is a significant component of the work performed that is collective and administrative, and which cannot be isolated to any subset of claims. The district court's approach to common benefit funds essentially ensures that such work would be unpaid and unpayable. By carving out one subset of the 9/11 MDL claims for purposes of establishing any common benefit fund, the court created precisely the disincentives and inequitable dynamics outlined above.

Likewise, exactly the same perverse effects arise from the district court's reliance on the fact that the 9/11 MDL involves multiple defendants with cases proceeding on different timelines. (SPA-18; SPA-31). Indeed, just such circumstances especially *require* the operation of a comprehensive common benefit

fund that corresponds to the scope of the 9/11 MDL. Otherwise, attorney work would stampede toward the claims that might be resolved initially, even though the court had constructed a broader MDL to ensure the efficient and fair allocation of attorney effort to all claims, all plaintiffs, and all defendants encompassed in the 9/11 MDL. The district court's approach would cripple the operation and management of MDLs.

## III.  <u>The District Court Erred in Declining to Establish a Common Benefit Fund that Prevents Unjust Enrichment</u>

The equitable principles of unjust enrichment and quantum meruit are supposed to shape the establishment, scope, and operation of common benefit funds. See MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004) (the concept of a common benefit fund is "grounded in the equitable powers of the courts under the doctrines of quantum meruit and unjust enrichment"); *see Boeing Co. v. Van Gemert*, 444 U.S. 473, 478 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939); *see also In re Zyprexa Prods. Liab. Litig.*, 594 F.3d at 128 (Kaplan, D.J., concurring). However, the district court's approach to common benefit fund issues failed to heed or apply these principles. Instead, it guaranteed the opposite result. The court ensured an inequitable windfall and uncompensated work: it conferred a windfall on attorneys who retained contingency fees without compensating the attorneys who performed work and advanced costs on their behalf and on the behalf of other plaintiffs and attorneys involved in the 9/11 MDL.

47

Where attorneys are retained on a contingent basis, they often assume the costs of litigation, stake their own time, and, if and only if their clients benefit, receive a higher payment that accounts for the risk of non-recovery. As with other representations, the Rules of Professional Responsibility require an attorney to "act with reasonable diligence" in undertaking representations. 22 N.Y.C.R.R. § 1200.0 (referencing Rule 1.3(c)). Diligence requires an attorney to "take whatever lawful and ethical measures are required to vindicate a client's cause of endeavor" and to act "with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." *See* American Bar Association Model Rules of Professional Conduct Rule 1.3. Indeed, an attorney who breaches these obligations forfeits his rights to the fee relating to that representation. *See First Nat'l Bank v. Pepper,* 454 F.2d 626, 633 (2d Cir 1972) (finding that attorney discharged for cause based on mishandling of case forfeits right to fees); *Schreiber v. Friedman*, 2020 U.S. Dist. LEXIS 169780, *26 (E.D.N.Y. Sept. 16, 2020) (finding that attorney forfeits right to fee when he is terminated for misconduct, which includes lack of diligence in pursuing claim); *Yannitelli v. D. Yannitelli & Sons Constr. Corp.*, 247 A.D.2d 271 (1st Dept. 1998) (recognizing forfeiture of contingent legal fee based on attorney's violation of Code of Professional Responsibility).

Thus, counsels' entitlement to a fee is intertwined with their discharge of the full scope of obligations undertaken pursuant to their representation agreements.

Appellants contributed to Appellees' discharge of those obligations. Here, the plaintiffs in the 9/11 MDL did not retain counsel merely to pursue a non-adversarial default against Iran. Rather, Appellees agreed to represent members of the 9/11 community in pursuing claims against a broad range of al Qaeda sponsors and supporters. *See supra* at pp. 9-11. Upon undertaking those representations, those attorneys assumed obligations to diligently represent their clients, extending to the full spectrum of claims and defendants the plaintiffs were pursuing in the 9/11 MDL. Attorneys in the 9/11 MDL, including Appellees and counsel for the *Havlish* plaintiffs, have relied upon committee members, and in significant part Appellants, to undertake work contemplated and required by their representation agreements and to incur the significant out-of-pocket expenses necessary for that work. Under a task-specific common benefit fund required by the district court, those same attorneys retained massive contingency fees made available pursuant to that representation, via the USVSSTF, and Appellants received nothing. The diligent prosecution of *all* claims arising under those representation agreements means that the benefits flowing to those plaintiffs and their attorneys should be shared with all attorneys providing benefits to them. Appellants and other committee members provided the services to Appellees' clients that formed the basis for Appellees to receive any fees at all. *See supra* at pp. 14-16.

49

Equity also requires that the district court establish a common benefit fund that serves as a vehicle for the committee members to seek compensation for common benefit work, in proportion to the value of the burdens they assumed and work they contributed. Establishing a common benefit fund for the benefit of all committee members based on their relative contributions to the 9/11 MDL would avoid the unjust enrichment of counsel who are otherwise benefiting exclusively from recoveries in the 9/11 MDL, and would provide *quantum meruit* compensation for committee members responsible for the vast majority of the work performed.

In the 9/11 MDL, each plaintiff retained counsel and agreed to pay attorneys' fees on any recovery. In exchange, counsel agreed to fully litigate their clients' claims before the district court. Absent the appointment of the PECs to coordinate the 9/11 MDL, Appellees in this case (and the *Havlish* plaintiffs' counsel) would have had to perform duplicative efforts to administratively manage the litigation and conduct overlapping discovery. While the committee structure is intended to prevent these inefficiencies, it cannot properly operate in the absence of a compensation structure. The common benefit work performed by committee members conferred a benefit on Appellees without regard to how closely the common benefit work is tied to a recovery by a subset of the MDL plaintiffs.

In this context, absent a common benefit fund that operates for the benefit of the 9/11 MDL as a whole, it is *counsel* that would be unjustly enriched at the expense

of Appellants, not the plaintiffs themselves. *See In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1011 (holding that "the beneficiaries [of common benefit work in multidistrict litigation] are the attorneys whose time was not so consumed" by the common benefit work, "but who shall receive all but eight percent (8%) of the attorneys fees originally contemplated by them" and their clients); *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 960-61 (N.D. Cal. 2021) ("As far as the Court can tell, regardless of whether a holdback is ordered in this MDL, plaintiffs whose lawyers performed common benefit work will see the same contingent fee extracted from their recovery pursuant to their contracts with their lawyers;" rejecting a comparison of common benefit funds in MDLs to common funds in class actions). Equity requires that the district court establish a common benefit fund from Appellees' fees that encompasses work performed in the 9/11 MDL as a whole, and to prevent the unjust enrichment of counsel who are receiving windfalls at the expense of, and prejudice to, Appellants. Even if it were permissible to establish a common benefit fund limited to a subset of claims, equity would likewise require that the contributions of all attorneys to the 9/11 MDL be recognized and taken into account in allocating attorneys' fees.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court vacate the district court's decisions and remand for further proceedings, including

the creation of a common benefit fund commensurate with the scope of the 9/11 MDL, allocating an appropriate share of Appellees' USVSSTF fees among all the attorneys contributing time and costs related to representation of the 9/11 plaintiffs.

Dated: June 3, 2024                Respectfully submitted,

                                    /s/ Sean P. Carter

                                    Sean P. Carter
                                    Abby J. Sher
                                    COZEN O'CONNOR
                                    1650 Market Street, Suite 2800
                                    Philadelphia, PA 19103
                                    (215) 665-2000

                                    Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32.

This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4)(A) because it contains 12,422 words, excluding the portions of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.


Dated:  June 3, 2024

/s/    J. Scott Tarbutton
J. Scott Tarbutton, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on June 3, 2024. I further certify that the foregoing was served on all counsel of record in this appeal by CM/ECF pursuant to Second Circuit Rule 25.1.

/s/    J. Scott Tarbutton
J. Scott Tarbutton, Esq.

# SPECIAL APPENDIX

i

# TABLE OF CONTENTS

**Page**

Opinion and Order of the Honorable Sarah Netburn,
dated September 30, 2019, Appealed From............ SPA-1

Opinion and Order of the Honorable Sarah Netburn,
dated September 30, 2020, Appealed From............ SPA-15

Memorandum Decision and Order of the Honorable
George B. Daniels, dated August 31, 2023,
Appealed From....................................................... SPA-27

Order of the Honorable George B. Daniels, dated
December 12, 2023, Appealed From ...................... SPA-34

Order of the Honorable George B. Daniels, dated
December 22, 2023, Appealed From ...................... SPA-36

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:

     **TERRORIST ATTACKS ON
     SEPTEMBER 11, 2001**

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:__ 9/30/2019

03-MDL-01570 (GBD)(SN)

<u>OPINION & ORDER</u>

**SARAH NETBURN, United States Magistrate Judge:**

     The <u>Havlish</u> Plaintiffs request that the Court create a common benefit fund and authorize

disbursements therefrom. The motion is GRANTED in part.[1]

BACKGROUND

     On December 22, 2011, the Honorable George B. Daniels entered a default judgment (the

"Original Default Judgment") on behalf of the <u>Havlish</u> Plaintiffs against, *inter alia*, the Islamic

Republic of Iran ("Iran"). ECF No. 2516. The <u>Havlish</u> Plaintiffs were subsequently awarded

damages in excess of $6 billion. ECF No. 2623.

     On August 31, 2015, relying on the evidence presented by the <u>Havlish</u> Plaintiffs, Judge

Daniels entered default judgments against Iran on behalf of the Plaintiffs in the <u>Ashton</u>, <u>Federal</u>

<u>Insurance</u>, and <u>O'Neill</u> actions. ECF Nos. 3020–22. Similar judgments were issued to the <u>Burnett</u>

Plaintiffs on January 31, 2017, and to other groups of Plaintiffs thereafter. <u>See, e.g.</u>, 18-CV-

5306, ECF No. 66 (granting final judgment on liability in favor of the <u>DeRubbio</u> Plaintiffs). The

---

[1] The Court issues this decision as an Opinion and Order. <u>See</u> <u>In re Zyprexa Prods. Liab. Litig.</u>, 594 F.3d 113, 117–18 (2d Cir. 2010) (finding that an order establishing a three-percent set-aside for a common benefit fund did not "give, or aid in giving, [any] substantive relief" sought in the lawsuit) (internal alterations omitted). To the extent Judge Daniels concludes that the motion falls within the excepted motions in 28 U.S.C. § 636(b)(1)(A), this decision should be interpreted as a Report and Recommendation.

Court has issued numerous partial final judgments in these cases, awarding damages to some but not all the identified Plaintiffs. See, e.g., ECF No. 5101. In addition, Plaintiffs in other actions against Iran are also taking steps to obtain damages awards: some have obtained a certificate of default but not yet moved for final judgment, while others are still in the process of completing service pursuant to § 1608 of the Foreign Sovereign Immunities Act ("FSIA"). These Plaintiffs — that is, any Plaintiff with a claim against Iran who is not part of the Havlish action — are collectively referred to as the "Responding Plaintiffs" or "Respondents."[2]

Both the Havlish Plaintiffs and the Responding Plaintiffs have faced significant challenges enforcing their judgments against Iran. In 2015, however, Congress passed legislation to create the United States Victims of State Sponsored Terrorism Fund (the "VSSTF" or the "Fund"). The VSSTF "provide[s] compensation to a specific group of international terrorism victims harmed by state-sponsored terrorism." See http://www.usvsst.com/faq.php, FAQ § 1.1 ("VSSTF FAQ"). The Department of Justice, which operates the Fund, has authorized two rounds of payments thus far, and it anticipates making a third distribution in 2020. See id., § 4.24. Notably, many (but not all) of the Plaintiffs with final judgments against Iran are eligible to receive compensation through the VSSTF. See ECF No. 5018, at 1.

Here, the Havlish Plaintiffs seek an order requiring Respondents to compensate Havlish counsel for the time spent developing and presenting evidence that led to the Original Default Judgment. ECF No. 4290 ("Pl's Br."), at 5. The Respondents, largely through the Plaintiffs' Executive Committees ("PECs"), opposed the motion. ECF No. 4407 ("RP's Br."). The Havlish Plaintiffs filed a reply on March 1, 2019. ECF No. 4430 (Pl's Reply Br.").

---

[2] Plaintiffs in the Hoglan and Ray actions, who are represented by common attorneys as the Havlish Plaintiffs, are also excluded from the "Responding Plaintiffs." See Pl's Br., at 6–7 n.3.

Specifically, the <u>Havlish</u> Plaintiffs seek an order:

1. directing the Respondents to set aside 12% of any amounts collected on the Respondents' judgments by any means;

2. directing counsel for the Respondents to deposit such amounts into a "common benefit fund" to be established and maintained by lead counsel for the <u>Havlish</u> Plaintiffs;

3. to the extent the deposited funds were derived from payments to Respondents by the VSSTF, directing the distribution of such funds to the <u>Havlish</u> attorneys as reimbursement of costs associated with the benefit bestowed upon Respondents; and

4. to the extent the deposited funds were derived from judgment collection sources other than the VSSTF, directing that distribution of such funds to the <u>Havlish</u> attorneys, or to other attorneys, or returned to the Responding Plaintiffs and their counsel who made the deposit, in whole or in part, be subject to the Court's future consideration.

Pl's Br., at 5–6.

Respondents contend that the fee application can be denied on three separate grounds. RP's Br., at 1. These arguments are unavailing, and for the reasons stated below, are rejected. Nevertheless, because the <u>Havlish</u> Plaintiffs did not provide adequate documentation for the time and expense incurred in obtaining the Original Default Judgment — and because the Respondents have not had an opportunity to review that documentation — the Court cannot determine the size of the common benefit fee at this time.

**LEGAL STANDARD**

In large multi-district litigations ("MDLs"), courts often establish a fund to compensate attorneys for the "work performed for the common benefit of all plaintiffs and their counsel." <u>See</u> Duke Law Center for Judicial Studies, <u>Standards and Best Practices for Large and Mass-Tort MDLs</u> 66 (2014). These funds — referred to as "common benefit funds" — ensure that "persons who obtain benefits of a lawsuit without contributing to defraying its costs" are not unjustly enriched at the successful litigant's expense. <u>Id.</u>

3

An MDL court's power to create a common benefit fund derives, at least in part, from its inherent managerial authority. District courts have broad discretion to coordinate and administer multi-district litigation. In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig., 953 F.2d 162, 165 (4th Cir. 1992). This includes the ability to, among other things, "combine procedures, appoint lead counsel, . . . [and] manage discovery." Id. Thus, "it is not open to serious question that a federal court . . . may designate . . . [a] set of attorneys to handle pre-trial activity on aspects of the case where the interests of all co-parties coincide." In re Air Crash Disaster at Florida Everglades, 549 F.2d 1006, 1014 (5th Cir. 1977).

This authority would be illusory if it was dependent upon lead counsel performing their assigned duties without any additional compensation. In re Vioxx Prods. Liab. Litig., 760 F. Supp. 2d 640, 648 (E.D. La. 2010) (citations omitted). A necessary corollary to appointing lead counsel is therefore the power "to assure that these attorneys receive reasonable compensation for their work." In re Zyprexa Liab. Litig., 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006) (citing In re Linerboard Antitrust Litig., 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003)). To exercise this power, courts may create a common benefit fund derived from "a fixed percentage of fees earned by individual attorneys who benefited from the work performed." Id. at 266 (citing Smiley v. Sincoff, 958 F.2d 498, 500–01 (2d Cir. 1992)); accord In re Air Crash Disaster, 549 F.2d at 1016 ("We hold that the district court had the power to direct that the Committee . . . be compensated and that requiring the payment come from other attorneys was permissible.").

Moreover, in addition to its managerial authority, a court's inherent powers of equity can also justify the creation of a common benefit fund. Under the "American Rule," the prevailing litigant must generally look to his own client for payment of attorney's fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). In the exercise of their equitable

powers, however, federal courts have created exceptions to this rule when the interests of justice so require. Hall v. Cole, 412 U.S. 1, 4–5 (1973).

Under the "common benefit" exception, an award of attorney's fees is appropriate where: (1) the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class; and (2) the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionally among them. See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella, 350 F.3d 73, 80 (2d Cir. 2003) (citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393–94 (1970)). Thus, in order to obtain common benefit fees, an attorney "must confer a substantial benefit to members of an ascertainable class," and the court "must ensure that the costs are proportionately spread among that class." In re Diet Drugs, 582 F.3d 524, 546 (3d Cir. 2009).

The purpose of the common benefit exception is to distribute the cost of litigation evenly among those who benefited. Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 54 F.3d 69, 72 (2d Cir. 1995) (citing Hall, 412 U.S. at 15). In managing multi-district litigations, courts rely on this doctrine to assess attorney's fees in favor of attorneys who render legal services in favor of all MDL plaintiffs. In re Vioxx Products, 760 F. Supp. 2d at 647–48 (collecting cases).

## DISCUSSION

Respondents contend that the Court should refuse to create a common benefit fund for three reasons: (1) the motion is premature; (2) Havlish counsel did not create a "common fund" for the benefit of other Plaintiffs; and (3) the efforts of Havlish counsel to obtain the Original Default Judgment were not authorized by the PECs and therefore do not constitute "common benefit work." RP's Br., at 2. The Court addresses these issues in turn.

I.        **The Motion Is No Longer Premature**

This is not the first time the Havlish Plaintiffs have requested a common benefit fund. On August 2, 2016, Judge Daniels denied their original fee application without prejudice to renewal. ECF No. 3322. He concluded, based on a report and recommendation from Magistrate Judge Frank Maas, that the motion was premature. Id. at 1–2. Given the intervening developments regarding the VSSTF, the Court concludes that the renewed motion is largely ripe for review.

Judge Maas determined that it was premature to create a common benefit fund for two reasons. First, the court had no basis to evaluate "the extent of the work that the Respondents [would] undertake to recover damages from Iran." ECF No. 3309, at 4. This information was critical to the court's analysis, as the Respondents' enforcement efforts could "substantially diminish the basis for creating a common benefit fund." Id. at 5.

This uncertainty, at least for most of the Responding Plaintiffs, no longer exists. Respondents did not have to litigate an enforcement action, domesticate their judgments overseas, or search for Iranian assets subject to collection. Rather, they received compensation by filing an application with the VSSTF. This process does not seem particularly onerous, see VSSTF FAQ, § 1.4, and Respondents do not claim otherwise. As a result, the amount of effort that Respondents might exert to enforce their judgments is no longer a reason to deny a request for a common benefit fund.

Second, Judge Maas emphasized that the "quantum of damages to be collected from Iran has yet to be determined." ECF No. 3309, at 5. This concern is also no longer applicable. The VSSTF notified claimants who were authorized to receive second-round payments in December 2018, and it began issuing awards on a rolling basis in January 2019. See VSSTF FAQ, §§ 4.24–25. Accordingly, the Responding Plaintiffs know the exact amount of compensation they have

received on their judgments against Iran. Although Respondents' total recovery will grow as the Fund makes additional payments, the initial distributions have been large enough that an interim award of attorney's fees is appropriate.[3] See Mass-Tort MDLs, at 70 ("In lengthy and complex cases, the [court] may choose to establish a fund to make interim reimbursement payments to plaintiffs' counsel.").

Respondents emphasize that claims against numerous Defendants have yet to be resolved. RP's Br., at 12. As a result, Respondents contend, the Court cannot determine the total amount that Plaintiffs might recover, or whether the Respondents' efforts in pursuing those claims will eclipse those of the Havlish counsel in obtaining a default judgment against Iran. Id. This argument is unpersuasive. Judge Maas was concerned with the uncertainty regarding the claims against Iran, not with that of the multi-district litigation as a whole. See ECF No. 3309, at 4–5. Moreover, although courts usually defer setting the common benefit fee until the MDL is resolved, that determination can be made earlier if individual cases begin to settle. Mass-Tort MDLs, 81. Given the unique situation raised by the VSSTF — and given the real concern that the remaining litigation will continue for at least several years — a common benefit fund applicable solely to claims against Iran is appropriate.

Nevertheless, portions of the fee application remain premature. Commercial plaintiffs, such as the Federal Insurance Plaintiffs, as well as Respondents who received compensation from previous victims' funds, are ineligible for the VSSTF. See RP's Br., at 12–13. The Court can only speculate as to: (1) the amount of effort these Respondents will expend to enforce their final judgments; and (2) the sums, if any, that will be recovered. Even Respondents who are eligible for the Fund may choose to pursue other, more time-intensive enforcement efforts. For

---

[3] To date, the Fund has paid approximately $2.1 billion to all eligible claimants. This includes individuals who are eligible to receive an award but are not plaintiffs in this litigation.

7

this reason, only Respondents who have received a payment from the VSSTF are required to contribute to the common benefit fund. To the extent the Havlish Plaintiffs seek an order directing Respondents outside of this category to contribute to a common fund, their request is DENIED without prejudice to renewal.

**II.      The Havlish Plaintiffs Need Not Have Created A "Common Fund"**

Respondents argue that the Court's equitable powers do not provide a basis to award attorney's fees to the Havlish Plaintiffs. RP's Br., at 14. This is so, Respondents claim, because Havlish counsel did not play a role in the creation or protection of a "common fund" in which all parties hold an interest. Id. at 15. This position is untenable as a matter of law.

Respondents rely on the Supreme Court's "common fund" cases. Under this precedent, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Whatever the scope of the common fund doctrine, it does not define the limits of a court's equitable powers to award attorney's fees. To the contrary, its underlying rationale has been extended to create a related but broader concept, the "common *benefit*" doctrine. In re Diet Drugs, 582 F.3d at 546 n.44; Rodonich, 52 F.3d at 32 n.2.

As discussed above, under the common benefit doctrine, an award of attorney's fees is appropriate where: (1) the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class; and (2) the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionally among them. Hall, 412 U.S. at 5 (citing Mills, 396 U.S. at 394–95). There is no requirement that the party seeking fees "must actually bring money into the court." Mills, 396 U.S. at 392. Indeed, the fact that a suit "may never produce[] a monetary recovery" does not preclude a fee award. Id. The

Supreme Court has therefore foreclosed any argument that the Havlish Plaintiffs must create a common fund to recover equitable attorney's fees.

**III.    The Havlish Plaintiffs Performed Common Benefit Work**

According to Respondents, a district court can use its inherent managerial authority to reimburse common benefit work only if it was "undertaken or approved by the Court-appointed Plaintiff leadership team." RP's Br., at 20. Respondents argue that Havlish counsel did not have the PECs' approval to pursue the Original Default Judgment. Id. at 19. As a result, under Respondents' view, the Havlish attorneys cannot be compensated for the expenses they incurred litigating claims against Iran.

The Court does not believe its managerial authority is so curtailed. To be sure, the Court *could have* ordered that common benefit work would be compensated only if it was approved by the PECs. See In re Mirena IUD Prods. Liab. Litig., No. 13-MDL-02434 (CS) (LMS) (N.D. Ohio July 10, 2013), ECF No. 207 ("Counsel are forewarned that no application for approval to incur common benefit fees . . . will be considered . . . unless counsel have first obtained approval from Lead Counsel."). But no such restriction is included in the any of the Court's Case Management Orders. See ECF Nos. 16, 247–48. Moreover, courts regularly award common benefit fees to non-leadership attorneys. See, e.g., In re Zyprexa, 467 F. Supp. 2d at 266; In re Genetically Modified Rice Litig., No. 06-MDL-1811, 2010 WL 716190, at *7 (E.D. Mo. Feb. 24, 2010). These cases, which do not seem to require approval of the executive committees, support a broader interpretation of the Court's managerial authority than offered by Respondents.

On certain facts, the Court agrees that a group of attorneys who repeatedly ignored the PECs' directions could lose the right to participate in a common benefit fund. See ECF No. 248 (awarding the PECs authority to direct and manage pretrial proceedings). But the Court is not

convinced that this is such a case. The Havlish Plaintiffs have two representatives on the PECs and therefore are in a position to pursue relief that could (and now has) benefited Plaintiffs as a whole. The evidence does not suggest that the Havlish Plaintiffs were "rouge actors;" rather, for reasons unknown to the Court, it seems that Havlish counsel and the remainder of the PECs simply understood that the former was pursuing claims against Iran, while the latter was focusing on other Defendants. Although this arrangement is not ideal, there is no evidence of any significant disruption or malfeasance. Indeed, the only time the PECs raised an issue with the Court, Judge Daniels permitted the Havlish Plaintiffs to move forward with their motion for default judgment. See ECF No. 4289, Exhibit C. To the extent the lack of coordination may have resulted in some duplicative work, any resulting inefficiencies are better addressed with reductions to the common benefit fee, not a complete bar from recovery.

In sum, Havlish counsel performed a substantial amount of work that benefited all Plaintiffs and allowed them to receive compensation from the VSSTF. The Court views these circumstances as exceptional and unlikely to reoccur in this litigation.

**IV.    Creating a Common Benefit Fund is Appropriate**

For nearly a decade, the Havlish Plaintiffs expended significant time and expense pursuing a default judgment against Iran. Their work included: (1) overseas travel; (2) sworn videotaped testimonies of four Iranian witnesses, including the first president of Iran; and (3) ten expert affidavits in the fields of terrorism, intelligence, criminal investigation, and the structural aspects of the Iranian government. See Pl's Br., at 10–12. The Havlish attorneys compiled this information into a formal motion for default judgment, submitting three memorandum of law and nearly 100 exhibits. Id. at 10. After conducting an evidentiary hearing, Judge Daniels adopted the

proposed findings of fact and conclusions of law and entered a final judgment as to liability. See ECF Nos. 2515–16.

Respondents almost exclusively relied on the Havlish evidence when they pursued their own default judgments years' later. See, e.g., ECF No. 2970 (Ashton); ECF No. 3000 (O'Neill). Indeed, both the Ashton and O'Neill Plaintiffs requested that the Court use "the evidence . . . previously received and analyzed" in Havlish. ECF No. 2970, at 21; ECF No. 3000, at 2. Judge Daniels obliged, entering default judgments based on the "evidence submitted by [the Havlish] Plaintiffs." ECF Nos. 3021 & 3022.

In these circumstances, creating a common benefit fund to compensate the Havlish attorneys is appropriate. Requiring Respondents' counsel to pay a percentage of their fees into a common fund spreads the costs of the litigation onto the class of individuals that benefited from their expenditure. Moreover, doing so promotes the Court's ability to manage the litigation by compensating attorneys who perform significant legal services in favor of all Plaintiffs. As a result, both the Court's equitable powers and its inherent managerial authority provide a basis to create the common benefit fund.

At this time, however, the Court cannot determine the size of the common benefit fee. While the amount recovered by the Responding Plaintiffs is a knowable fact, that information was not presented to the Court. The Havlish Plaintiffs contend that the Respondents received approximately $700 million from the VSSTF in January 2019. Pl's Br., at 18. Although not without reason, this position amounts to mere speculation. The Court will not set a common benefit fee without knowing the amount that the Respondents' have actually recovered.

SPA-12

More significantly, the <u>Havlish</u> Plaintiffs failed to provide adequate proof of their time and expenses.[4] In his report and recommendation, Judge Maas emphasized that neither party had submitted contemporaneous time records documenting the hours they spent obtaining default judgments against Iran, "despite the fact that courts often rely on such information in determining the common benefit fee." ECF No. 3309, at 6 (citing <u>Manual for Complex Litigation</u> 191 (4th ed. 2004)). A lack of time records is particularly problematic when the requested fee is excessive, which may be the case here. As Respondents point out, there are concerns that the work performed by the <u>Havlish</u> attorneys was unnecessary, duplicative, and otherwise available from public sources.[5] RP's Br., at 20. After just two years of litigation, for example, the <u>Havlish</u> Plaintiffs had expended "approximately 10,000 attorney hours and in excess of a half million dollars" in pursuit of their claims. ECF No. 3273, Exhibit B, at 6 (status letter to Judge Casey from the <u>Havlish</u> Plaintiffs).

The Court makes no judgment as to whether any of these hours were reasonably expended. Nevertheless, given that a fee applicant's lodestar is often used to cross-check the reasonableness of the percentage fee award, the <u>Havlish</u> Plaintiffs must come forward with additional evidence before the Court can assess a common benefit fee.

### CONCLUSION

The motion to create a common benefit fund is GRANTED, but the request for a 12% set-aside is DENIED without prejudice to renewal. The parties are directed to meet-and-confer

---

[4] The <u>Havlish</u> Plaintiffs reference an affidavit submitted in connection with their September 2012 motion for damages. Pl's Reply. Br., at 9. The declarant states that the <u>Havlish</u> attorneys incurred nearly $2 million in expenses and explains how much of that amount was incurred by each law firm within the <u>Havlish</u> consortium. 03-CV-9848, ECF No. 301, Exhibit M. The expenses are not justified in any meaningful way, and there is no reference at all to attorney hours. <u>Id.</u>

[5] Respondents contend that the time they spent litigating claims against other Defendants "would have to be considered in evaluating any fee request." RP's Br., at 21. The Court disagrees. Because no other Defendant has settled or been found liable, any consideration of the work performed would be premature.

12

SPA-13

regarding: (1) the need, if any, for limited discovery, see Mass-Tort MDLs, at 83; (2) the kinds of documents that constitute reasonable proof of the Havlish Plaintiffs' time and expenses, but would not impose an undue burden to produce and review; and (3) the propriety of reserving decision on the size of the common benefit fee until Respondents are notified of the amounts they will recover through the VSSTF's third-round of payments.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 4289 & 4291.

**SO ORDERED.**

DATED:        September 30, 2019
                   New York, New York

SARAH NETBURN
United States Magistrate Judge

\*            \*            \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

----------------------------------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:_____             │
│ DATE FILED:__  9/30/2020     │
└─────────────────────────────┘
```

**03-MDL-01570 (GBD)(SN)**

<u>**OPINION & ORDER**</u>

**SARAH NETBURN, United States Magistrate Judge:**

      On December 13, 2019, the <u>Federal</u> Plaintiffs and "Responding Plaintiffs"[1] filed motions

for reconsideration and/or clarification of the Court's September 30, 2019 common benefit fund

("CBF") decision ("September 30 Order"). ECF Nos. 5359, 5361. The <u>Havlish</u> Plaintiffs filed

opposition briefs to both motions on January 10, 2020, ECF Nos. 5498, 5499, and reply briefs

were filed on January 31, 2020, ECF Nos. 5795, 5797. The parties later supplemented the record

with letters to the Court. ECF Nos. 6135, 6168. The Court DENIES the <u>Federal</u> Plaintiffs' and

Responding Plaintiffs' motions.[2]

**BACKGROUND**

      On March 19, 2016, the <u>Havlish</u> Plaintiffs filed an initial motion for the creation of a

common benefit fund. They sought an order requiring all other lawyers with judgments against

Iran to deposit eight percent of any damages recovered from Iran to compensate the <u>Havlish</u>

Plaintiffs for their efforts in securing a default judgment against Iran, upon which the Court

relied in entering default judgments on behalf of Responding Plaintiffs. ECF No. 3235. On July

---

[1] The Court understands the "Responding Plaintiffs" to be the Plaintiffs' Executive Committee for Wrongful Death and Personal Injury Plaintiffs and certain other the Plaintiffs listed in their motion. The Court further understands that the "Responding Plaintiffs" in the initial motion represented *all* Plaintiffs with a claim against Iran who are not part of the <u>Havlish</u> action.

[2] The Court issues this decision as an Opinion and Order. <u>See</u> September 30, 2019 Opinion and Order, at 1 n.1. To the extent Judge Daniels concludes that these motions fall within the excepted motions in 28 U.S.C. § 636(b)(1)(A), this decision should be interpreted as a Report and Recommendation.

12, 2016, Magistrate Judge Frank Maas issued a Report and Recommendation advising that the Honorable George B. Daniels deny the <u>Havlish</u> Plaintiffs' motion without prejudice to its later renewal. ECF No. 3309. Magistrate Judge Maas based his recommendation on the fact that it would be premature to reach the merits of the motion because the amount of effort Respondents would expend to collect their award from Iran, and the sums that they would actually recover, would be speculative. <u>See</u> <u>id.</u>, at 4-7. Judge Daniels adopted Magistrate Judge Maas's Report and Recommendation in full on August 2, 2016. ECF No. 3322.

The <u>Havlish</u> Plaintiffs filed a renewed motion for the creation of a common benefit fund on December 19, 2018. ECF No. 4289. On September 30, 2019, the Court issued an Opinion & Order granting in part the <u>Havlish</u> Plaintiffs' renewed motion. September 30 Order, ECF No. 5180. The Court addressed and rejected the three arguments presented by Responding Plaintiffs as to why the <u>Havlish</u> motion should be denied. First, the Court found that given the intervening developments regarding the USVSST Fund since the initial <u>Havlish</u> motion was filed, it was no longer premature to create a common benefit fund. <u>Id.</u>, at 6-8. Second, the Court found that <u>Havlish</u> Plaintiffs need not have created a common fund to be awarded attorney's fees under the common benefit doctrine pursuant to the Court's equitable power. <u>Id.</u>, at 8-9. Third, the Court found that <u>Havlish</u> Plaintiffs' work constituted common benefit work even though the Plaintiffs' Executive Committees ("PECs") did not coordinate its activities with <u>Havlish</u> Plaintiffs, further finding that any inefficiencies resulting from the lack of coordination are better addressed with reductions to the common benefit fee, not a complete bar from recovery. <u>Id.</u>, at 9-10.

The Court held that it could not determine the size of the common benefit fee at the time because Responding Plaintiffs had not presented the amount they recovered to the Court and the <u>Havlish</u> Plaintiffs had failed to provide adequate proof of their time and expenses. <u>Id.</u>, at 11-12.

SPA-17

The Court directed the parties to meet and confer regarding the need for any limited discovery, the kinds of documents that constitute reasonable proof of the Havlish Plaintiffs' time and expenses, and the propriety of reserving decision on the size of the common benefit fee until Responding Plaintiffs are notified of the amounts they will recover through the USVSST Fund's third-round of payments. Id., at 12-13. Responding Plaintiffs allege that Havlish counsel refused to provide them with any documentation at the meet and confer, see Responding Plaintiffs' Motion for Reconsideration ("Responding Pls. Br."), at 12, and filed, along with the Federal Plaintiffs, motions for reconsideration and/or clarification of the Court's September 30 Order.

**LEGAL STANDARD**

The standards governing a motion for reconsideration under Local Civil Rule 6.3 are the same as those under Rule 59(e) of the Federal Rules of Civil Procedure. Abrahamson v. Bd. of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002). To prevail on such a motion, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). The standard for granting a motion for reconsideration is strict. Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995). Accordingly, reconsideration is generally denied unless "the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citing Shrader, 70 F.3d at 257). The decision to grant a motion for reconsideration is within the sound discretion of the district court. Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009).

SPA-18

**DISCUSSION**

**I.       No Clear Error or Manifest Injustice in the Court's September 30 Order**

Responding and <u>Federal</u> Plaintiffs both argue that no other multidistrict litigation

("MDL") court has carved out a CBF to benefit one group of "common benefit" attorneys at the

expense of and to be paid by another group of "common benefit" attorneys from recoveries

obtained against one defendant when the litigation against other defendants is ongoing.

Respondent Pls. Br., at 4. They propose that the CBF should serve to compensate members of the

Plaintiffs' Steering Committee for their relative investments prosecuting the MDL as a whole.

<u>Federal</u> Plaintiffs' Memorandum of Law ("<u>Federal</u> Pls. Br."), at 1. Responding Plaintiffs argue

that the purpose of MDL CBF awards is to avoid the "free rider" problem, in which passive

attorneys representing MDL plaintiffs reap a windfall from the efforts of the attorneys carrying

out the common-benefit work on behalf of the entire MDL. Responding Pls. Br., at 5. They argue

that this concern is not at issue with respect to Responding and <u>Federal</u> Plaintiffs' counsel who

have been actively involved in prosecuting claims in the MDL for over 17 years. <u>Id.</u>

Responding and <u>Federal</u> Plaintiffs do not cite to any caselaw, nor is the Court aware of

any, that precludes the Court from awarding counsel a common benefit fee for their efforts

successfully obtaining the original default judgment against Iran. While many or even most

MDLs may wait until the litigation is complete, most MDLs do not involve multiple defendants

with cases proceeding on vastly disparate timelines. As this Court previously noted, in denying

the <u>Havlish</u> Plaintiffs' initial motion, Judge Mass was concerned only with the uncertainty at the

time regarding the claims against Iran, not with that of the MDL as a whole. September 30

Order, at 7; ECF No. 3309, at 4-5. As this Court found in its prior decision, Judge Mass's

concerns are no longer applicable, and as such, "a common benefit fund applicable solely to

4

claims against Iran is appropriate" and well within "the sound discretion of the district court."
September 30 Order, at 7; In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., No.
05-1708 (DWF)(AJB), 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008).

Conversely, Responding and Federal Plaintiffs are not yet entitled to common benefit
fees for other cases in the MDL because those cases have not yet reached conclusion. See, e.g.,
Duke Law Center for Judicial Studies, Standards and Best Practices for Large and Mass-Tort
MDLs 71 (2014) ("Duke Report") ("When there is no recovery by the plaintiffs, there will be no
common benefit funding") (emphasis added); see id., at 68 ("The CBF's function is to
compensate plaintiffs' counsel for their work based on their relative contributions to the outcome
of the case.") (emphasis added). Judge Kaplan's concurrence on the Court of Appeals suggests
similarly that a common benefit award presumes the success of the litigation. See In re Zyprexa
Prods. Liab. Litig., 594 F.3d 113, 130 (2d Cir. 2010) (Kaplan, J., concurring) (finding that the
"most equitable" source of compensation in an MDL is the "recoveries" of benefitting plaintiffs).

Responding Plaintiffs argue that Havlish counsel, and this Court, cannot "rely on the
common fund authority as an independent basis for a CBF." Responding Pls. Br., at 8 n.5.
Responding Plaintiffs are incorrect. On the contrary, "MDL courts have consistently cited the
common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who
render legal services beneficial to all MDL plaintiffs." In re Vioxx Prods. Liab. Litig., 760 F.
Supp. 2d 640, 647 (E.D. La. 2010); see also In re Genetically Modified Rice Litig., MDL No.
06-1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010) (relying on common fund doctrine as
an alternate basis to inherent managerial authority). The Third Circuit Court of Appeals similarly
found that under the common benefit doctrine, which is "distinct from the common fund
doctrine" but which "derives from the latter," "an award of attorney's fees is appropriate where

'the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class.'" In re Diet Drugs, 582 F.3d 524, 546 (3rd Cir. 2009) (citing Polonski v. Taj Mahal, 137 F.3d 139, 145 (3d Cir. 1998)).

Responding Plaintiffs further contend that the Court conflated two separate points in the Duke Report: a discussion of "interim reimbursement payments," intended to defray expenditures by lead counsel who front the bulk of costs and expenses of the litigation, and a common benefit assessment of settlement proceeds. Responding Pls. Br, at 10. Responding Plaintiffs argue that the Report says nothing about awarding payment of attorneys' fees out of the common benefit assessment before the conclusion of the MDL as a whole. Id. But the Report, in fact, states exactly that: "When individual cases in the MDL begin to settle . . . the transferee judge should determine an appropriate assessment to be made from the gross recovery in each case . . . [and] should order the defendant to withhold the specified percentage of the recovery from the settlement proceeds and deposit that amount into the CBF." Mass-Tort MDLs, at 80. Responding Plaintiffs are correct that in the MDL context, the source of tension in a fee application is typically "between the attorneys who have done common benefit work and the primary attorneys who have not." Vioxx, 760 F. Supp. 2d at 653. But this does not mean, as Responding Plaintiffs argue, that a CBF can be established in the MDL context only once the contributions of all attorneys doing CBF work can be assessed. Responding Pls. Reply, at 6.

Responding and Federal Plaintiffs further express concern that if only Havlish counsel are awarded a CBF, MDL attorneys would be incentivized to pursue only the "low-hanging fruit," such as default judgments against non-appearing defendants, and discouraged from taking on tasks where a favorable outcome is less certain as well as administrative case management responsibilities where the nexus between such work and a particular recovery is more attenuated.

Responding Pls. Br., at 7; Federal Pls. Br., at 11. This concern is misplaced. Unlike the Iran

cases, the Saudi cases in this MDL, among others, may not resolve for years. See Havlish Oppo.

to Federal Pls., at 8. Because the cases against Iran have by and large come to a close, now is the

appropriate time to consider a common benefit fee for all counsel, including but not limited to

Havlish counsel, that contributed work for the benefit of all Plaintiffs in securing the original

default judgment entered by Judge Daniels on December 22, 2011. ECF No. 2516. To the extent

that Responding or Federal Plaintiffs ask the Court to set aside money now from USVSST Fund

recoveries for awards on behalf of non-Iran related work, that request is not timely and is denied.

Responding Plaintiffs nonetheless contend that an award for Havlish counsel in particular

is inequitable because Havlish counsel have likely already been compensated, including for work

pursuing independent recoveries such as the attachment of 650 Fifth Avenue. Responding Pls.

Br., at 5, 7. Responding Plaintiffs further point to the "self-interested nature of the work that

Havlish counsel pursued," contending that the timing of Havlish counsels' motion for default

judgment against Iran was "driven by self-serving interests that did not serve a common benefit."

Responding Pls. Br., at 14; ECF No. 6135, at 1-2.

The Court does not find Responding Plaintiffs' allegations concerning any self-serving

nature of Havlish counsels' actions to be availing. As the Court already found, although Havlish

counsel and the PECs did not have an "ideal" arrangement, the evidence does not suggest that

Havlish Plaintiffs were "rogue actors" and there is no evidence of "any significant disruption or

malfeasance" due to Havlish Plaintiffs' work on the original Iran default judgment. September

30 Order, at 10; see also Federal Pls. Br., at 6 (noting that while "the coordination of the default

efforts was less than ideal, the fact that Havlish counsel handled the default judgment while other

members of the committees were focused on other necessary work reflects the kind of division of assignments contemplated by the case Management Order #3, ECF No. 248).

The question before the Court is not whether Havlish counsel have been compensated by their own clients. The question is whether they, potentially along with other counsel who contributed to the original Iran default judgment, have been compensated by those who relied on counsel's common benefit work. See In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972, 549 F.2d 1006, 1016 (1977) (rejecting the notion that a committee "must work without any compensation other than that coming from their own clients" and finding MDL managerial authority to be "illusory if it is dependent upon lead counsel's performing duties desired of them for no *additional* compensation,") (emphasis added). To the extent that Havlish Plaintiffs' work was duplicative of Responding Plaintiffs' work, any resulting inefficiencies are "better addressed with reductions to the common benefit fee, not a complete bar from recovery." September 30 Order, at 10.

## II.      The Common Benefit Fee

The motions for reconsideration before the Court were filed, in part, as the result of a breakdown in the Court-ordered meet and confer process between the parties. Federal Plaintiffs contend that discussions with Havlish counsel were unproductive, and request that the Court establish procedures and criteria to govern the CBF. Federal Pls. Br., at 1 n.1. Responding Plaintiffs argue that Havlish counsel were unwilling to disclose any records to support the time and expense they claim to have incurred in obtaining the default judgment against Iran. Responding Pls. Br., at 6. They argue that this intransigence is contrary to the Court's order and makes any determination of the reasonableness of the Havlish counsels' request for 12% of all recoveries, which amounts to 80% of all attorneys' fees available under the USVSST

SPA-23

Clarification Act's cap on fees of 15% of recovery, impossible to assess. Id., at 6-7. They also argue that if the Court were to limit fees solely to work done in connection with claims against Iran, many Responding Plaintiffs' counsel, would also be entitled to compensation because they contributed significant common benefit work that was ultimately utilized in the Havlish original motion for default judgment. Id., at 16 n.12.

Havlish counsel contend, to the contrary, that they have described to the PEC the extent to which they have time and expense records as well as what they are doing to reconstruct time to the extent that they do not, and have explicitly offered to supply the PEC with all of this information and documentation provided the PEC would supply them with information relevant to the determination of the amount of a reasonable common benefit fee. Havlish Oppo. to Responding Pls., at 7. Specifically, Havlish counsel asked for information and documentation related to work the PEC claims they and/or the Responding Plaintiffs' counsel have done that contributed in any way to the original default judgment against Iran, and information disclosing the amounts of money that Responding Plaintiffs and their attorneys have reaped in payments and fees from the USVSST Fund in Rounds One and Two and expect to receive in Round Three. Id. Havlish counsel also suggest that Responding Plaintiffs are making "fabricated" statements regarding their contributions to the Havlish original motion for default judgment. Id., at 11.

Presenting a way out of this morass, Federal Plaintiffs recommend that the Court appoint a special master to manage the common benefit process, in accordance with Court-established criteria. Federal Pls. Br., at 13. The special master would make recommendations concerning the appropriate value of the CBF, the total value of the common benefit work undertaken by all committee members over the course of the MDL, the total common benefit expenses incurred, the equitable allocation of that CBF among committee members, and the most equitable

approach for directing monies into the CBF. Id., at 14. To that end, Federal Plaintiffs contend that Havlish counsel seek to sidestep the criteria traditionally used to determine the extent and allocation of common benefit funds in complex MDLs, arguing instead for an award based on a percentage share of other attorneys' USVSST Fund recoveries. Federal Pls. Reply, at 9.

The Court reaffirms that it is appropriate now to assess a common benefit fee to compensate those lawyers who worked for the common benefit of all plaintiffs in pursuit of the claims against Iran. To determine the appropriate size of the common benefit fee, including which parties should pay and which parties should receive, both Havlish and Responding Plaintiffs are ordered to file sworn declarations and supporting evidence setting forth the work they did in securing the original Iran default judgment.[3] Only work done for the "common benefit" of all MDL plaintiffs should be submitted to the Court, not work completed in the pursuit of independent recoveries solely on behalf of counsels' own clients. Accordingly, the presumptive cutoff for common benefit work would be December 22, 2011.

Additionally, all parties, including Havlish counsel, should submit documentation to the Court detailing the amounts of money that they have received or expect to receive from the USVSST Fund. This documentation should include both the percentage of Plaintiffs' clients' recovery that counsel have received as a fee, and the dollar amount of those percentages. Responding Plaintiffs should also provide information about the distribution of USVSST funds to all other counsel, to the extent that they are able to do so. The Court defers judgment on whether a special master would be appropriate until the parties identify and produce to the Court

---

[3] It is the Court's understanding that Federal Plaintiffs are ineligible for USVSST Fund recovery. See September 30 Order, at 7; ECF No. 6474. To the extent Federal Plaintiffs have either contributed work to the original Iran default judgment or received any payments from the USVSST Fund, they should submit all of the same information to the Court.

SPA-25

the above information regarding their contributions to the original Iran default judgment and the USVSST Fund awards that they received.

### III.    First-Round USVSST Fund Payments

Responding Plaintiffs argue that <u>Havlish</u> counsel have waived any interest in USVSST Fund Round One recoveries because they did not renew their motion for the creation of a CBF for nearly two years after Round One distribution payments were made to clients and fees distributed to counsel. Responding Pls. Br., at 17. Responding Plaintiffs cite <u>Havlish</u> counsel's December 2018 motion, where <u>Havlish</u> counsel moved to receive payment from "distributions received by Responding Plaintiffs in 2019 and continuing through all future years of the USVSST." ECF No. 4289, at 2. Even if <u>Havlish</u> counsel have not waived interest in Round One funds, Responding Plaintiffs argue that these funds can no longer be recovered because any fees paid to attorneys in 2017 have already been consumed, and it would be difficult if not impossible to recover the amount constituting the percentage that <u>Havlish</u> counsel seeks from Round One distributions from subsequent rounds in light of the substantial increase in the number of claims submitted to the USVSST Fund since that time. Responding Pls. Reply, at 10.

<u>Havlish</u> counsel respond that no such waiver occurred, and that it is too late for Responding Plaintiffs to raise the issue now. They argue that they filed their original motion well before Round One payments, and at the time of refiling the motion, they did not have any information about how many Iran judgment holders, if any, had qualified for Round One payments. <u>Havlish</u> Oppo. to Responding Ps., at 16. <u>Havlish</u> counsel cite their renewed motion where they asked the Court for an order "directing the Responding Plaintiffs to set aside twelve percent (12%) of any amounts collected on the Responding Plaintiffs' judgments." <u>Id.</u>

11

The Court did not find, and does not find here, that <u>Havlish</u> counsel waived any interest in USVSST Fund Round One payments. <u>Havlish</u> counsel filed their initial motion well before the Round One payments were distributed, and there is no reason why Round Two and Three should be included but Round One excluded from a common benefit fee. The Court also does not find Responding Plaintiffs' argument that Round One funds may no longer be recoverable to have merit. Whether the specific monies received from the USVSST Fund have been consumed is irrelevant; as Responding Plaintiffs have themselves recently argued, "[t]hat some fees may have been disbursed is immaterial to the question of whether Respondents will comply with a final order directing payment into a common benefit fund." ECF No. 6475, at 5 n.6.

## CONCLUSION

The Court DENIES Responding and <u>Federal</u> Plaintiffs' motions for reconsideration. The parties are directed to submit sworn declarations and supporting evidence to the Court within 30 days with (1) detailed information concerning their time and expenses for the common benefit in securing the original Iran default judgment, and (2) information detailing the percentages and dollar amounts that all parties and their counsel have recovered from the USVSST Fund.

Responding Plaintiffs' request for oral argument is DENIED as moot. <u>Havlish</u> Plaintiffs' May 15, 2020 motion for discovery is also DENIED as moot. The Clerk of Court is respectfully directed to terminate the gavels at ECF Nos. 5359, 5361, and 6216.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

September 30, 2020
New York, New York

SPA-27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE:                                       :
                                             :        MEMORANDUM DECISION
                                             :         AND ORDER
TERRORIST ATTACKS ON                         :
SEPTEMBER 11, 2001                           :        03 MDL 1570 (GBD) (SN)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Counsel for *Havlish* Plaintiffs seek an order requiring Plaintiff Respondents[1] to compensate

*Havlish* counsel, through the creation of a common benefit fund, for their time spent preparing

evidence that led to the initial default judgment against the Islamic Republic of Iran entered on

December 22, 2011.  (*See* Mot. for Common Benefit Fund, ECF No. 3235; Renewed Mot. for

Common Benefit Fund, ECF No. 4289.)[2]

On September 30, 2019, Magistrate Judge Sarah Netburn issued an Opinion and Order,

granting in part the *Havlish* Plaintiffs' request for the creation of a common benefit fund, but

finding that the size of the common benefit fee and any amount of distribution were not yet

ascertainable.  (Sept. 30, 2019 Op. & Order at 1–3.)  Respondents then filed motions for

reconsideration and/or clarification.  (*See* Mots. for Recons. and/or Clarification, ECF Nos. 5359

and 5361.)  Magistrate Judge Netburn issued a second Opinion and Order on September 30, 2020

denying the motions for reconsideration and/or clarification.  (Sept. 30, 2020 Op. & Order (the

"Order"), ECF No. 6481, at 1.)  Respondents filed objections to the Order on November 4, 2020.

---

[1] Plaintiffs with claims against Iran who are not part of the *Havlish* action collectively constitute
"Respondents."  Plaintiffs in the *Hoglan* and *Ray* actions who are represented by common attorneys as
*Havlish* Plaintiffs, however, are excluded from "Respondents."  (*See* Sept. 30, 2019 Op. & Order, ECF No.
5180, at 2 n.2.)

[2] Unless otherwise indicated, all docket numbers refer to the main docket sheet for this multidistrict
litigation.  *See In re Terrorist Attacks on September 11, 2001,* No. 03-md-1570.

(*Fed. Ins. Pls.'* Objs., ECF No. 6520; Responding Pls.' Objs., ECF No. 6522 (collectively the "Objections").) Both Respondents' Objections to the Order are OVERRULED. Magistrate Judge Netburn's Order denying the motions for reconsideration and/or clarification is CONFIRMED. To facilitate the assessment of a common benefit fee and any future distribution, the parties must submit the materials outlined in Magistrate Judge Netburn's Order. (*See* Order at 10–12.)

## I.   BACKGROUND

On December 22, 2011, this Court entered a default judgment on behalf of *Havlish* Plaintiffs against Iran. (Order of J., ECF No. 2516.) Soon afterward, *Havlish* Plaintiffs sought and received judgment exceeding $6 billion. (*See* Oct. 3, 2012 Mem. Decision & Order, ECF No. 2623, at 1.) This Court later entered default judgments against Iran on behalf of *Ashton*, *Federal Insurance*, *O'Neill*, and *Burnett* Plaintiffs, among others, who relied upon the evidence filed by *Havlish* Plaintiffs. (Sept. 30, 2019 Op. & Order at 1–2.) *Ashton* and *Federal Insurance* Plaintiffs were collectively awarded over $10 billion in damages against Iran. (*See* Mar. 9, 2016 Mem. Op. & Order, ECF No. 3229.)

Although the parties have encountered impediments to enforcing their judgments against Iran, Congress' creation of the United States Victims of State Sponsored Terrorism Fund (the "USVSST Fund") has compensated victims of state-sponsored terrorism such as Plaintiffs in this case. (Sept. 30, 2019 Op. & Order at 2.) Many 9/11 Plaintiffs are eligible for USVSST Fund compensation due to their final judgments against Iran. (*Id.*) In total, the USVSST Fund has paid more than $3 billion to 9/11 and other victims of state-sponsored terrorism over the course of four rounds of payment and, pending the availability of sufficient funds, will continue to do so until the Fund sunsets in 2039. *See* U.S. Victims of State Sponsored Terrorism Fund Home Page, http://www.usvsst.com/ (last visited Aug. 30, 2023).

2

*Havlish* Plaintiffs first moved for the creation of a common benefit fund on March 19, 2016, seeking an order requiring all those attorneys with judgments against Iran to compensate *Havlish* Plaintiffs' counsel by setting aside eight percent of any payments received by Plaintiffs. (Mot. for Common Benefit Fund.)   Magistrate Judge Frank Maas issued a Report and Recommendation, (July 12, 2016 R. & R., ECF No. 3309), subsequently adopted by this Court, (Aug. 2, 2016 Mem. Op. & Order, ECF No. 3322), recommending the denial of the *Havlish* Plaintiffs' motion without prejudice to its later renewal.   *Havlish* Plaintiffs filed their renewed motion for the creation of a common benefit fund on December 19, 2018, seeking a deposit of twelve percent of damages recovered against Iran.   (*See* Renewed Mot. for Common Benefit Fund at 2.)  Magistrate Judge Netburn's Opinion and Orders followed.

## II.     LEGAL STANDARDS

### A.  Revising a Magistrate Judge's Orders Under Rule 72

A district judge must modify or set aside only those parts of a magistrate judge's order related to non-dispositive matters that are clearly erroneous or contrary to law.[3]  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "A district court is justified in finding a magistrate judge's ruling clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

---

[3] Magistrate Judge Netburn properly issued her non-dispositive rulings as Opinion and Orders but noted that they could be interpreted as Reports and Recommendations. (*See* Sept. 30, 2019 Op. & Order at 1 n.1; Order at 1 n.2.)   A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report.  28 U.S.C. § 636(b)(1)(C).  The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects.  *Id.*  Under this standard, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made.  *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).  While this Court reviews Magistrate Judge Netburn's Opinion and Orders under the "clearly erroneous or contrary to law" standard, this Court has reviewed the record and "arrive[d] at its own, independent conclusion," *see id.* (citation omitted), in confirming the Orders and thus would reach the same conclusion under a *de novo* standard.

3

SPA-30

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (cleaned up).

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules

of procedure." *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (cleaned up).

This is a highly deferential standard, and the objector thus carries a heavy burden. *U2 Home Ent.,*

*Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y.

Aug. 13, 2007); *see also Lugosch v. Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y. 2006) (particular

deference due where "the magistrate judge has been deeply involved in discovery matters in the

case for years").

### B. Motions for Reconsideration

Under Local Rule 6.3, reconsideration is not favored and is "an extraordinary remedy to

be employed sparingly in the interests of finality and conservation of scarce judicial

resources." *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y.

2019) (citation omitted). "The standard for granting such a motion is strict, and reconsideration

will generally be denied unless the moving party can point to controlling decisions or data that the

court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Narrow grounds justifying reconsideration include "an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin*

*Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted).

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the

case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at

the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.

2012) (citation omitted).

4

### III.   A COMMON BENEFIT FUND SPECIFIC TO IRAN-RELATED JUDGMENTS IS APPROPRIATE

It is proper to establish a common benefit fund to provide compensation for Iran-related litigation expenses in this multidistrict litigation ("MDL"). (*See* Sept. 30, 2019 Op. & Order at 11). While "many or even most MDLs may wait until the litigation is complete [to award counsel a common benefit fee], most MDLs do not involve multiple defendants with cases proceeding on vastly disparate timelines." (Order at 4. *Contra Fed. Ins. Pls.'* Objs. at 3 (characterizing a common benefit fee at this stage of the MDL as "premature").) Moreover, Respondents "do not cite to any caselaw, nor is the Court aware of any, that precludes the Court from awarding counsel a common benefit fee for their efforts successfully obtaining the original default judgment against Iran." (*Id.*)

The awards from the USVSST Fund are not beyond the scope of this Court's authority. Respondents express concern that, because the source of the payments sought by *Havlish* Plaintiffs is "outside" of this litigation, "the MDL court lacks authority to order that those recoveries be contributed as part of an MDL assessment." (Responding Pls.' Objs. at 11; *see also* Responding Pls.' Reply, ECF No. 6557, at 2–4.) Respondents further argue that because the legislation creating the USVSST Fund explicitly bars judicial review, redistributing USVSST funds "would be improper" such that Magistrate Judge Netburn "exceeded the court's authority." (Responding Pls.' Objs. at 11–12 (citing 34 U.S.C. § 20144(b)(3)).) But the awards and consequential attorneys' fees in dispute originated from judgments this Court issued in this MDL.[4] "There is no separate requirement that the court also have jurisdiction over the corpus of the settlement, as though this

_____

[4] A judgment is generally required to receive payments from the USVSST Fund. *See* U.S. Victims of State Sponsored Terrorism Fund Home Page ("The USVSST Fund may compensate eligible United States persons who . . . hold a final judgment issued by a United States district court awarding the applicant compensatory damages arising from acts of international terrorism for which a foreign state sponsor of terrorism was found not immune from the jurisdiction of the courts of the United States under the Foreign Sovereign Immunities Act." (citing 34 U.S.C. § 20144)).

were a quasi-*in rem* proceeding." *In re Genetically Modified Rice Litig.* ("*Rice II*"), 835 F.3d 822,

830 (8th Cir. 2016); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543

(JMF), 2019 WL 5865112, at *4 (S.D.N.Y. Nov. 8, 2019) (citing *Rice II* for the exercise of the

Court's power to spread the costs of common benefit work product). As in *Rice* II, because one

party here was "enriched by the work" of another, "participation in federal litigation gave the

district court authority to order the setting aside of funds." *Rice II*, 835 F.3d at 831.

## IV.    THIS COURT CANNOT YET DETERMINE THE SIZE OF THE COMMON BENEFIT FEE

### A.   Recovery of First Round USVSST Funds Has Not Been Waived

Magistrate Judge Netburn's Order accurately determined that *Havlish* Plaintiffs have not

waived interest in funds disbursed in Round One of USVSST payments. (Order at 12.)   *Havlish*

Plaintiffs filed their initial motions prior to the distribution of the Round One payments, (*id.* at 11),

reflecting an effort to avoid problems that might arise from an effort to "clawback" such payments,

(*see Havlish* Opp'n to Resp'ts' Objs., ECF No. 6544, at 22–24).   Furthermore, Responding

Plaintiffs had themselves argued "[t]hat some fees may have been disbursed is immaterial to the

question of whether Respondents will comply with a final order directing payment into a common

benefit fund." (Order at 12 (citation omitted).)   *Havlish* Plaintiffs did not waive the recovery of

Round One USVSST payments.

### B.  This Court Cannot Yet Assess the Size of the Common Benefit Fee

Magistrate Judge Netburn correctly found that it would not be possible for the Court to

establish the proper size of the common benefit fee without first obtaining additional information

from the parties, ordering the parties "to file sworn declarations and supporting evidence setting

forth the work they did in securing the original Iran default judgment," as well as documentation

regarding any USVSST recovery.[5]  (*See* Order at 10, 12; *see also* Sept. 30, 2019 Op. & Order at 11–12.)  This Court stayed the submission of these documents until 30 days after its ruling on the Objections.  (*See* Oct. 9, 2020 Order, ECF No. 6490; Oct. 14, 2020, ECF No. 6498.)  This Court consequently directs the parties to submit the relevant documentation identified in Magistrate Judge Netburn's September 30, 2020 Opinion and Order.

## V.    CONCLUSION

Responding and *Federal Insurance* Plaintiffs' Rule 72 Objections to Magistrate Judge Netburn's September 30, 2020 Opinion and Order, (ECF Nos. 6520 and 6522), are OVERRULED. Magistrate Judge Netburn's 2019 and 2020 Opinions and Orders, (ECF Nos. 5180 and 6481), are CONFIRMED.

Plaintiffs are ordered to meet and confer and to submit jointly or individually a specific plan for structuring a common benefit fund.  Plaintiffs are also ordered to comply with Magistrate Judge Netburn's instructions by submitting sworn declarations and supporting evidence to assist in ascertaining the proper size of the common benefit fee and the appropriateness of any specific proposed distribution.  Any proposed requests regarding the specific nature of a common benefit fund, a common benefit fee, or any specific distribution shall be supervised by Magistrate Judge Netburn, and subject to review and approval by both the Magistrate Judge and this District Court.

Dated: August 31, 2023
      New York, New York                           SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

---

[5] Magistrate Judge Netburn also reserved judgment on the suitability of the appointment of a special master until after the receipt of such information.  (Order at 10–11.)

7

SPA-34

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON     :
SEPTEMBER 11, 2001            :      MDL 03-1570 (GBD)(SN)

_____

**This Document Relates To:**    **All Cases**

### [PROPOSED] ORDER

Counsel for the *Havlish* Plaintiffs, having reached a private settlement

agreement with the law firms of Motley Rice LLC; Kreindler & Kreindler LLP;

Speiser Krause, PC; and Anderson Kill PC, on behalf of their firms and clients, the

*Havlish* Plaintiffs' Renewed Motion for an Order Creating a Common Benefit

Fund and Authorizing Certain Disbursements Therefrom (MDL Dkt. No. 4289 &

4291) ("the Motion"), is hereby dismissed with prejudice as against Motley Rice

LLC, Kreindler & Kreindler LLP; Speiser Krause, PC; and Anderson Kill PC and

their clients.

Counsel for any other party with claims against the Islamic Republic of Iran

[continued on next page]

1

SPA-35

impacted by the Motion may contact counsel for the *Havlish* Plaintiffs if interested

in attempting to reach a private settlement of the Motion.


DEC 12 2023

SO ORDERED.

DATE: _____

New York, New York

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

2

SPA-36

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

**IN RE: TERRORIST ATTACKS ON**               :

**SEPTEMBER 11, 2001**                                :               MDL 03-1570 (GBD)(SN)

_____

**This Document Relates To:**

> *Ashton v. al Qaeda Islamic Army, et al.*, Civil No. 02-cv-6977 (GBD)(SN)
> *Bauer v. al Qaeda Islamic Army, et al.*, Civil No. 02-cv-7236 (GBD)(SN)
> *Parker, et al. v. Islamic Republic of Iran*, 18-cv-11416 (GBD)(SN)

## ORDER

Counsel for the Havlish Plaintiffs, having reached a private settlement agreement with the

law firm of Baumeister & Samuels, P.C., on behalf of their firm and clients; the Havlish

Plaintiffs Renewed Motion for an Order Creating a Common Benefit Fund and Authorizing

Certain Disbursements Therefrom (MDL Dkt. No 4289 and 4291)("the Motion"), is hereby

dismissed with prejudice as against Baumeister & Samuels, P.C., and their clients.

**SO ORDERED.**

DATE: **DEC 2 2 2023**

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE