# 24-0502-cv(L), 24-0593-cv(CON)

## United States Court of Appeals
### *for the*
## Second Circuit

———————————————

COZEN O'CONNOR,

*Objector-Appellant,*

— v. —

MOTLEY RICE LLC, KREINDLER & KREINDLER LLP, SPEISER KRAUSE, PC, ANDERSON KILL P.C., BAUMEISTER & SAMUELS, P.C.,

*Respondents-Appellees,*

WIGGINS CHILD PANTAZIS FISHER GOLDFARB LLC, WIGGINS CHILD PANTAZIS FISHER GOLDFARB PLLC, FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC, WEBSTER LAW, P.C. f/k/a Mellon & Webster, THOMAS E. MELLON, III; RAMEY & HAILEY; THE LAMM GROUP; EDWARD RUBENSTONE (formerly Lamm Rubenstone), TERRELL HOGAN YEGELWEL, P.A.; LAW OFFICE OF DAVID LEE; JAMES P. McCOY; LAW OFFICE OF JOHN A. CORR, WINDER & COUNSEL, PC,

*Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

═══════════════════════════════

## APPELLANT'S REPLY BRIEF

═══════════════════════════════

SEAN P. CARTER
ABBY J. SHER
COZEN O'CONNOR
*Attorneys for Appellant*
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
(215) 665-2000

COUNSEL PRESS   (800) 4-APPEAL • (384937)

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................1

LEGAL ARGUMENT .......................................................................6

I.     THE DISTRICT COURT'S ORDERS CREATE SIGNIFICANT AND CONCRETE HARMS THAT THREATEN THE EFFECTIVE AND APPROPRIATE ADMINISTRATION OF MDLS .............................................6

     A.     Appellees' Arguments Are Inconsistent With The Core Principles Underlying The Establishment And Timely Operation Of A Common Benefit Fund ..................................6

     B.     The District Court's Orders Foreclosed Appellants From Obtaining Compensation For Common Benefit Work From USVSSTF Recoveries Flowing From The 9/11 MDL ..............................................................11

     C.     Appellees Do Not Present Any Substantive Arguments That Support Affirming The District Court's Orders On The Merits ...............................................................16

II.    THIS COURT HAS JURISDICTION OVER THE APPEALS ........21

     A.     The Orders Below Are Final, Appealable Judgments ...........22

     B.     Appellants Have Appellate Standing ....................................26

III.   ADVISORY MANDAMUS SUPPORTS THIS COURT'S EXERCISE OF JURISDICTION .......................................................28

IV.   THE ARGUMENTS RAISED BY THE *HAVLISH* APPELLEES DO NOT IMPACT APPELLANTS' REQUESTED RELIEF ..............................................................31

V.    CONCLUSION ......................................................................36

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32 .........................37

CERTIFICATE OF SERVICE .................................................................38

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013) ..............................................................29, 30

*Fresno Cnty. Emples. Ret. Ass'n v. Isaacson*,
   925 F.3d 63, 67 (2d Cir. 2019) ...............................................................16

*Honeywell Intern., Inc. v. Purolater Prods. Co.*,
   468 F.3d 162 (2d Cir. 2006) ....................................................................22

*In re Air Crash Disaster at Florida Everglades*,
   549 F.2d 1006 (5th Cir. 1977) ...................................................................7

*In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*,
   617 F. App'x 136 (3d Cir. 2015) .............................................................22

*In re Bard IVC Filters Products Liability Litig.*,
   81 F.4th 897 (9th Cir. 2023) ..............................................................23, 24

*In re GM LLC Ignition Switch Litig.*,
   477 F. Supp. 3d 170 (S.D.N.Y. 2020) .......................................................9

*In re Gonzales*,
   623 F.3d 1242, 1246 (9th Cir. 2010) .......................................................30

*In re Grand Jury Subpoena*,
   909 F.3d 26, 28 (1st Cir. 2018) ...............................................................30

*In re IBM Corp.*,
   687 F.2d 591 (2d Cir. 1982) ..............................................................30, 31

*In re Roundup Prods. Liab. Litig.*,
   544 F. Supp. 3d 950 (N.D. Cal. 2021) ...................................................7, 8

*In re Terrorist Attacks on September 11, 2001*,
   714 F.3d 118 (2d Cir. 2013) ..............................................................32, 33

*In re Terrorist Attacks on September 11, 2001*,
   714 F.3d 353 (2d Cir. 2013) ....................................................................33

*In re Terrorist Attacks on September 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ...............................................................33

*In re Zyprexa Prods. Liab. Litig.*,
    594 F.3d 113 (2d Cir. 2010) ...........................................................7, 31

*Krumme v. WestPoint Stevens Inc.*,
    143 F.3d 71 (2d Cir. 2006) ...............................................................22

*Miller Law Firm, LLC v. Laborde Earles Law Firm*,
    2022 U.S. App. LEXIS 30548 (9th Cir. Nov. 3, 2022) .....................25

*New Mexico ex rel. State Eng'r v. Carson*,
    908 F.3d 659 (10th Cir. 2018) ...........................................................28

*Ryan v. Gonzales*,
    568 U.S. 57 (2013) ..............................................................................30

*Siegal v. Merrick*,
    619 F.2d 160 (2d Cir. 1980) ...............................................................24

*Smiley v. Sincoff*,
    958 F.2d 498 (2d Cir. 1992) .................................................................7

*Wilson v. FBI*,
    91 F.4th 595 (2d Cir. 2024) ...............................................................17

## Statutes and Rules

28 U.S.C. § 1291 ..........................................................................22, 24

Fed. R. Civ. P. 54(b) ..........................................................................24

## Other Authorities

Eric A. Posner, *The Regulation of Groups: The Influence of Legal and
    Nonlegal Sanctions on Collective Action*, 63 U. CHI. L. REV. 133,
    137-39 (1996)........................................................................................9

MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004)................................9

Thomas E. Willging & Emery G. Lee III, *From Class Actions to
    Multidistrict Consolidations: Aggregate Mass-Tort Litigation After
    Ortiz*, 58 U. KAN. L. REV. 775, 799 (2010)........................................31

## PRELIMINARY STATEMENT

Appellees begin their brief by asking what this appeal is about, *see* Dkt. No. 97.1 at 1 ("Joint Merits Br."),[1] and the answer is quite simple: this appeal concerns whether fundamental common benefit compensation principles will be applied in a singularly complex multidistrict litigation proceeding ("MDL") arising out of the September 11, 2001 terrorist attacks (the "9/11 MDL"). This MDL is a textbook case for when such principles should apply. Even so, in December 2023, the district court entered two orders, the subject of these appeals, that prevented attorneys who have led representation of victims in the 9/11 MDL for more than twenty years from being compensated for the work that they performed on behalf of all plaintiffs in the MDL, despite multi-billion dollar recoveries flowing to certain plaintiffs from the litigation (the "December 2023 orders") (SPA34 – SPA36).

Appellants – law firms representing corporate plaintiffs in one of the most expansive MDL proceedings in history – have for more than twenty years engaged in substantial legal work for the benefit of all plaintiffs in the 9/11 MDL. Appellees[2]

---

[1] Unless otherwise noted, the docket entry numbers and citations to the briefing in this matter refer to Case No. 24-502 (L). Case No. 24-502(L) was consolidated with Case No. 24-593(CON) by order dated July 9, 2025 (Dkt. No. 87). All "ECF" citations refer to the 9/11 MDL docket, 03-md-1570. All "SPA" citations refer to the Special Appendix, submitted with Appellants' Opening Brief.

[2] As referred to herein, "Appellees" includes those law firms designated as Appellees in the consolidated appeals pending before this Court at Case No. 24-502(L) and Case No. 24-593(CON): Anderson Kill P.C., Baumeister & Samuels P.C., Kreindler & Kreindler LLP, Motley Rice LLP, and Speiser Krause, P.C. References herein to

– other law firms representing individual plaintiffs in the same MDL – have received hundreds of millions of dollars in contingency fee arrangements because those law firms' clients fit within certain statutory categories enabling them to use default judgments obtained in the 9/11 MDL to obtain payments from the United States Victims of State Sponsored Terrorism Fund ("USVSSTF"), a Congressionally-created compensation fund. As explained in Appellants' Opening Brief, *see* Dkt. No. 37.1 at 11, 20, 48-49 ("Appellants' Opening Br."), many of those plaintiffs would not have obtained default judgments or compensation, and their counsel would not have been able to discharge their representation obligations, but for Appellants' efforts.

The December 2023 orders effectively immunized Appellees from any obligation to contribute any portion of their fees from the USVSSTF into a common benefit fund. The orders did so on the basis of backroom settlements that excluded Appellants entirely, foreclosing Appellants' rights to common benefit compensation for any work not directly related to securing non-adversarial default judgments against the Islamic Republic of Iran ("Iran"). *See* Appellants' Opening Br. at 27-29; *infra* at § I.B. By doing so, the orders wipe out any right to common benefit compensation from the multi-billion dollar USVSSTF recoveries for literally tens of

---

the "*Havlish* Appellees" includes those law firms that intervened in these appeals by motion dated March 24, 2025. *See* Dkt. No. 73.2.

2

thousands of hours of work and investments undertaken for the benefit of all plaintiffs, even though that work was essential to and enabled Appellees' fee recoveries. This approach departs from the legal requirements governing common benefit compensation, unjustly enriches attorneys who relied on Appellants to fulfill obligations assumed under their representation agreements, and defeats the incentive and compensation structure that common benefit funds are designed to provide and which is essential to the efficient and effective management and prosecution of MDL proceedings.

Appellees dedicate the vast majority of their Joint Merits Brief to rehashing arguments they previously raised in their motion to dismiss for lack of jurisdiction. *See* Joint Merits Br. at 26-43. Appellants' opposition to the motion to dismiss argued that because the jurisdictional arguments regarding finality and standing are so obviously intertwined with the merits of the appeals, the Court should refer the motion to dismiss to the merits panel. *See* Dkt. No. 60.1 at 2-3 ("Opp. to Motion to Dismiss"). Appellants also highlighted the district court's final determinations that denied Appellants' efforts to secure compensation for common benefit work from recoveries in the litigation. *Id.* at 12-15. This Court agreed with Appellants, referred the motion to dismiss to the merits panel, and formally incorporated the motion briefs into the briefing before this panel. *See* Dkt. No. 67.1.

In their Joint Merits Brief, Appellees now recycle near-identical arguments on finality and standing to avoid having to address the merits of the appeals. *See* Joint Merits Br. at 26-43. Appellees devote a mere two-and-a-half pages to the arguments on the merits, and provide no persuasive argument or authority to support the district court's orders on appeal. *Id.* at 44-46. They do not dispute the legal principles requiring compensation of common benefit work in MDL proceedings, Appellants' leadership role in performing work required to prosecute claims for all MDL plaintiffs for more than twenty years, or the links between Appellants' work and the benefits accruing to Appellees' clients – including the vast, unshared benefits. Appellees instead simply assert that the district court's orders are independent of and have no impact on Appellants – a suggestion that wholly ignores the actual effect and import of those orders. *Id.* at 45-46; *see infra* at § I.C. That claim also ignores how Appellants consistently asserted their rights to be compensated and argued to Appellees and the district court that Appellees' backdoor settlements could not lawfully operate to eliminate Appellants' right to common benefit compensation. *See* Opp. to Motion to Dismiss at 7-12 (outlining consistent representations to this effect made by Appellants from the time that the *Havlish* plaintiffs moved to renew their motion for a common benefit fund until the district court entered the December 2023 orders).

4

The *Havlish* Appellees, intervenors in these appeals, are attorneys representing a small subset of plaintiffs in the 9/11 MDL, who in 2011 obtained defaults against Iran through the presentation of evidence in an uncontested hearing establishing Iran's liability. Before this Court, the *Havlish* Appellees reiterate many of the same arguments presented by Appellees and also do so without providing a legitimate challenge to Appellants' claims for relief under basic legal principles requiring the timely establishment and operation of a common benefit fund. *See* Dkt. No. 98.1 ("*Havlish* Response Br."). The relief sought by Appellants does not affect the *Havlish* Appellees' rights to obtain compensation for the work they undertook to obtain default judgments against Iran and, for that reason, the appeals do not implicate the intervening appellees' rights. The *Havlish* Appellees principally fret that recognizing Appellants' right to common benefit compensation may adversely affect their private settlements with the other Appellees, but Appellants do not seek to overturn those agreements. *See Havlish* Response Br. at 38-40. To the extent the relief sought by this appeal may collaterally affect those settlements, that would be a function of the undisclosed terms of the settlements themselves – which did not involve Appellants and cannot operate to eliminate their rights to common benefit compensation.

## LEGAL ARGUMENT

I. **THE DISTRICT COURT'S ORDERS CREATE SIGNIFICANT AND CONCRETE HARMS THAT THREATEN THE EFFECTIVE AND APPROPRIATE ADMINISTRATION OF MDLS**

A. **Appellees' Arguments Are Inconsistent With The Core Principles Underlying The Establishment And Timely Operation Of A Common Benefit Fund**

On the merits, both sets of Appellees briefly argue that there was no need at this juncture to establish a common benefit fund encompassing the full scope of the MDL work and recoveries and that Appellants are free at some later date to (again) petition the district court for such a fund addressing future recoveries by MDL plaintiffs. *See* Joint Merits Br. at 45-46; *Havlish* Response Br. at 48-50, 53-54. This is wrong because the district court was required under governing principles to set up such a fund and denied Appellants' efforts to have it do so, *see infra* § I.B., and, even if that were not so, Appellees err in attempting to discount the harm arising from the district court's approach under the theory that it may permit Appellants to someday seek possible compensation based on future theoretical recoveries. *See infra* § I.C. But both of Appellees' arguments face a more fundamental problem: they are inconsistent with the basic legal principles that required the district court to establish a timely and effective common benefit fund.

As noted in Appellants' Opening Brief, an effective and fair structure for compensating attorneys for common benefit work undertaken to advance the interests of all plaintiffs and claims is essential to the effective management and

conduct of complex MDL proceedings and thus legally required in a broad set of circumstances. *See* Appellants' Opening Br. at 34-39. This requirement recognizes that MDL proceedings necessitate that certain attorneys "coordinate and conduct pretrial proceedings on behalf of all plaintiffs to avoid what otherwise might well become chaotic." *In re Zyprexa Prods. Liab. Litig.,* 594 F.3d 113, 130 (2d Cir. 2010) (Kaplan, J., concurring). The authority to appoint lead counsel to perform common benefit work goes hand-in-hand with the obligation to create a structure to compensate that work. "The desirability—indeed, the compelling need—to have pretrial proceedings managed or at least coordinated by lead counsel or a steering or executive committee demands the existence of a source of compensation for their efforts on behalf of all." *Id.* "The interests to be served are too important to be left to volunteers (or draftees) who are unpaid in the sense that they get nothing additional." *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1016 (5th Cir. 1977); *see also Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have exercised this power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation."). As MDL courts long have recognized, the power to appoint lead counsel would be "illusory if it [were] dependent upon lead counsel's performing the duties desired of them for no additional compensation." *Air Crash Disaster*, 549 F.2d at 1016; *see also In re Roundup Prods. Liab. Litig.*, 544 F. Supp.

3d 950, 962 (N.D. Cal. 2021) ("[W]hen a district court is handling an MDL or some other group of related cases, it has the authority to compensate common benefit work by redistributing attorneys' fees in those cases to the extent necessary to ensure effective management and adjudication of the litigation").

On appeal, Appellees do not contest or even directly address these principles or the need to compensate those attorneys who perform work vital to the efficiency of complex litigation proceedings. Indeed, Appellees advocated for these precise principles repeatedly during the course of the common benefit fund proceedings before the district court, and expressly urged that any common benefit fund established from Iran-related recoveries must provide compensation for all common benefit work. *See* Appellants' Opening Br. at 20 (citing Appellees' arguments in response to the renewed motion to establish a common benefit fund, wherein Appellees asserted that "[i]f the Court is inclined at all to entertain [the *Havlish*] fee demand . . . the Court should give full consideration to the common benefit work of the entirety of the PECs"); *see also id.* at 22 (citing arguments presented by Appellees Motley Rice and Kreindler & Kreindler that "the Court should rule that *all* common-benefit work in the MDL, not just work involving claims against Iran, is potentially eligible for a CBF award . . ."). Appellees have now adopted a contrary position only because they hope that their backdoor settlements with the *Havlish*

8

Appellees can immunize them from providing common benefit compensation to Appellants.

Appellees' current argument is inconsistent with these legal requirements and would deeply undermine the incentive structure that is essential to the basic functioning of MDL proceedings. Indeed, without a clear common benefit fund structure that provides real and timely compensation, the result is that "no one has much incentive" to perform common benefit work. *See* Eric A. Posner, *The Regulation of Groups: The Influence of Legal and Nonlegal Sanctions on Collective Action*, 63 U. CHI. L. REV. 133, 137-39 (1996). The federal court system, which has become increasingly reliant on MDL practice, cannot efficiently operate in the absence of a common fund compensation structure. If attorneys who do not contribute common benefit work "were not required to pay any costs of that work, 'high-quality legal work would be under-incentivized and, ultimately, under-produced.'" *In re GM LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 174 (S.D.N.Y. 2020) (citation omitted). Moreover, an effective common benefit structure is necessary to avoid unjust enrichment for attorneys who have relied on Appellants' work, including to discharge their client obligations and to secure recoveries for their clients. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004) (the concept of a common benefit fund is "grounded in the equitable powers of the courts under the doctrines of quantum meruit and unjust enrichment").

9

Appellees disregard these legal standards in advocating for a result that fails to establish any common benefit structure that provides appropriate incentives and avoids unjust enrichment. At the outset of the 9/11 MDL, the district court recognized that the nature and scope of this massive and complex action demanded that counsel take coordinated efforts to facilitate the efficient conduct of the litigation. *See* Appellants' Opening Br. at 11-15 (discussing district court's appointment of committee members and responsibilities imposed on executive committee members pursuant to Case Management Order No. 3). Consistent with the obligations imposed on them by the district court, Appellants and other attorneys engaged in substantial common benefit work and other case management obligations for the benefit of all plaintiffs in the MDL, without regard to which of those efforts, if any, would result in recoveries or related fees. *Id.* at 14-16. This common benefit work also served to fulfill obligations other attorneys, including Appellees, committed to carry out pursuant to their representation agreements, including the pursuit of the broad spectrum of claims and defendants targeted by all defendants in the 9/11 MDL. *See, e.g., id.* at 23. Appellees were unjustly doubly enriched by Appellants' common benefit work, and again by the contingency fees that they retained without allocating any share to Appellants for that work that enabled the recoveries. Likewise, the theoretical potential that some other source of recovery may become available at some future time, and that this recovery could serve as an

10

alternate source of compensation for already undertaken common benefit work, is insufficient to ensure that the appropriate incentives are in place to facilitate the efficient management of MDLs.

Complex multidistrict litigation is not a lottery that rewards some attorneys who undertake some common benefit work on an MDL and leaves nothing for others who do the bulk of such work. Yet that is precisely what Appellees' position would produce, in this case and others to follow.

**B.     The District Court's Orders Foreclosed Appellants From Obtaining Compensation For Common Benefit Work From USVSSTF Recoveries Flowing From The 9/11 MDL**

Appellees seek to shift the focus from the district court's denial of efforts to establish a common benefit fund by alternating between claims that the district court did not address Appellants' efforts to establish a fund and claims that the court did not foreclose future efforts by Appellants to do so. *See* Joint Merits Br. at 45-46; *see also Havlish* Response Br. at 48-50. These claims, even if correct, would be of no use to Appellants because common benefit fund principles required the district court to establish a timely and functionally effective fund. *See supra* § I.A. But as importantly, Appellees' arguments mischaracterize what Appellants requested of the district court and how that court responded.

The December 12, 2023 and December 22, 2023 Orders that are the subject of this appeal are post-judgment fee orders arising from default judgments entered

against Iran. (SPA34 – SPA36). Each of those Orders "dismiss[ed] with prejudice" a motion to create a common benefit fund as to a vast majority of the personal injury claimants. In doing so, each made final the determination that attorneys who performed common benefit work in the 9/11 MDL – namely, Appellants – will receive zero compensation from substantial recoveries produced by this multidistrict litigation, while other attorneys – Appellees – received hundreds of millions of dollars in counsel fees from those same recoveries. *See* Appellants' Opening Br. at 19 (recognizing USVSSTF had, as of that briefing, distributed recoveries in favor of eligible 9/11 plaintiffs in excess of $4 billion, and that such recoveries resulted in estimated attorneys' fees in excess of $615 million).

The effect of the plain language of the district court's orders is clear – these orders finally and conclusively deny Appellants any right to common benefit compensation from USVSSTF recoveries for Appellants' massive scope of work not directly and immediately related to obtaining the Iran default judgments, and they immunize Appellees from any obligation to make any contribution from their USVSSTF fees to a fund that provides compensation for common benefit work beyond the *Havlish* Appellees' modest investments directly related to obtaining a non-adversarial default judgment. All other investments of time and resources toward common benefit work and case management obligations necessary to advance the interests of all plaintiffs in the 9/11 MDL are excluded from being

compensated under the district courts' prior orders addressing compensation from USVSSTF fees resulting from the litigation. *See* Appellants' Opening Br. at 41-47. As a result, the bulk of the common benefit work essential to the district court's ability to effectively manage the proceedings, and undertaken pursuant to obligations imposed on Appellants and others by the district court at the outset of the 9/11 MDL under Case Management Order #3, *see id.* at 12-16, has and will remain uncompensated, despite billions of dollars in recoveries to others resulting from that same litigation.

Appellees strain to present the Court with a different view of the December 2023 orders. To this end, they contend that the orders "merely memorialized the private settlement between [] two groups of lawyers as to the allocation of fees and expenses." *See* Joint Merits Br. at 20. They further argue that the memorialization of those private settlements, approved by the district court through the December 2023 orders, "means that all parties have received compensation directly." *Id.* Appellees premise this conclusion on their reasoning that the "private settlements" include claims of more than 95% of the personal injury claimants in the MDL and that commercial plaintiffs (Appellants' clients) were otherwise exempt from the common benefit fund envisioned by the district court. *Id.* at 20-21. On this basis, Appellees suggest that their settlements, and the district courts orders finalizing

those settlements, do not concern or adversely impact Appellants' common benefit rights. *Id.* at 45.

This framing ignores the actual effect of the December 2023 orders and the context in which they issued. At base, Appellees implicitly assume that the district court properly limited common benefit compensation from USSVSTF recoveries to work directly related to obtaining default judgments against Iran. Only based on this assumption can Appellees claim that their private settlements and the related district court orders finalizing them and foreclosing any further common benefit remedy served as an appropriate way to finally resolve the common benefit issues. But that position simply assumes, without argument, the central issue before the district court and on appeal: whether it was proper to reject Appellants' efforts to be compensated under a common benefit fund. For the reasons described above, the fact that the district court's orders eliminated any USVSSTF common benefit fund for work not directly related to the Iran default is itself the central defect of the orders. As Appellees do not contest, Appellants have not received – and are foreclosed by the December 2023 orders from receiving – *any* compensation from the USVSSTF recoveries, notwithstanding the fact that the litigation has produced hundreds of millions of dollars in counsel fees, and Appellants have performed the common benefit work that enabled those same recoveries. *See supra* at § I.B.

It is no answer to argue, as Appellees do, that Appellants remain free to move in the district court for a common benefit fund and counsel fees that perhaps could ostensibly derive from future potential recoveries. *See* Joint Merits Br. at 45-46; *see also Havlish* Response Br. at 48-50. Although the 9/11 MDL is ongoing, there can be no assurance that recoveries will flow from other sources as the litigation proceeds, when those theoretical recoveries might be secured, whether they will be sufficient to provide proper common benefit compensation for over twenty years of common benefit work, or countless other variables. Further, the district court has already held that it will not establish any common benefit fund from the USVSSTF fees to provide compensation to Appellants or other counsel for work not directly related to the Iran default judgments, and even if that were not so, future distributions from the USVSSTF are uncertain and speculative. *See* Appellants' Opening Br. at 21-26.

The well-established principles governing common benefit funds require a timely and effective structure that compensates work performed on behalf of all plaintiffs in the MDL – work that has already occurred here and cannot hinge on theoretical future events that hold only a distant and uncertain prospect of compensation. After all, Appellants have already been working for the benefit of others, including Appellees and their clients, for more than twenty years. Thus, even if Appellees are correct that the December 2023 orders do not preclude Appellants

15

from seeking to establish a common benefit fund from unspecified future recoveries, the impact of the district court's orders is still to unjustly enrich Appellees at Appellants' expense and to destroy and distort all the incentives required for a successfully operated MDL. Because the district court erred in failing to create a structure for attorneys who undertake common benefit work to obtain compensation from massive recoveries that have come to pass, the December 2023 orders should be vacated with direction to establish an effective common benefit fund.

## C. Appellees Do Not Present Any Substantive Arguments That Support Affirming The District Court's Orders On The Merits

Appellees only briefly address the particular merits of this appeal, *see* Joint Merits Br. at 44-46; *Havlish* Response Br. at 40-54, and their arguments regarding both the applicable legal standard and their specific defenses of the district court's approach are without merit.

Initially, Appellees' argument employs an inappropriate legal standard and rests on the incorrect statement that the district court's decision to create a common benefit fund "is surely a discretionary matter left for case administration by the court below." *See* Joint Merits Br. at 24; *see also Havlish* Response Br. at 40. This claim is incorrect. As set forth in Appellants' Opening Brief at 33, "[t]he Second Circuit reviews a district court's decision to grant or deny an award of attorneys' fees for abuse of discretion, reviewing de novo any rulings of law." *See Fresno Cnty. Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 67 (2d Cir. 2019) (quoting *Flanagan,*

16

*Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.,* 814 F.3d 652, 656 (2d Cir. 2016); *see also Wilson v. FBI,* 91 F.4th 595, 598 (2d Cir. 2024)) ("Arguments that a district court committed legal error in denying a fee award are reviewed <u>de novo</u>"). Appellants assert that the district court made several errors of law by refusing to create a common benefit fund from Appellees' USVSSTF recoveries resulting from the 9/11 MDL and by dismissing the motions relating to the establishment of the common benefit fund. *See* Appellants' Opening Br. at 30-33. Because these are legal errors, review of the district court's orders is de novo, and Appellees' efforts to have this Court apply a discretionary standard on appeal should be rejected. In any event, the district court's departures from standards governing common benefit compensation in MDL proceedings at issue here, *see supra* at § I.A,* would readily meet the abuse of discretion standard as well.

In relation to their arguments that the district court's orders should be affirmed on the merits, Appellees allocate just over two pages of their Joint Merits Brief to presenting two arguments. *See* Joint Merits Br. at 44-46. Neither provides a basis for affirming the district court's orders here.

*First,* Appellees assert that Appellants' arguments on appeal are largely "irrelevant" because the December 2023 orders ensure that no "interim Iran-only CBF will likely be created." *Id.* at 44-45. This argument strips the December 2023 orders of all context and ignores the very reason the district court's approach was

17

improper. Appellants' position in the common benefit proceedings before the district court was that a common benefit fund *should be established* from the USVSSTF fees, and that it should operate to provide compensation *for all common benefit work*. *See* Appellants' Opening Br. at 20-26. Appellants' objections to a more limited Iran-only fund were based on the fact that such an approach *fell short*: it would fail to provide compensation for common benefit work unrelated to securing the Iran default judgment, in contravention of the requirements and principles discussed above. *Id.* at 41-47. The fact that no Iran-only fund will be established does not change the fact that the district court refused to establish a proper and necessary common benefit fund from the USVSSTF fees to compensate Appellants and other counsel for the full range of their common benefit work. The December 2023 orders at issue in this appeal finalized that outcome.[3]

Appellants' arguments relating to the district court's errors in establishing an Iran-only common benefit fund thus are not "obviously moot," as suggested by Appellees. *See* Joint Merits Br. at 45.

---

[3] The district court's earlier orders indicating that the contemplated common benefit fund would apply only to Iran-related work were not final, as they contemplated a further process to establish the common benefit fund from the USVSSTF fees and issue compensation awards. The December 2023 orders supplanted that process and made final the determination that Appellants are entitled to no compensation for common benefit work not directly related to securing the Iran default judgment. As such, there is no merit to Appellees' suggestion that this appeal is untimely. *See* Joint Merits Br. at 23 n.8, *id.* at 28.

*Second*, Appellees assert that the December 2023 orders "do not 'deny' [Appellants] anything" because Appellants remain free to move for the establishment of a common benefit fund. *Id.* at 45-46. This claim is simply untrue. Again, the December 2023 orders definitively prohibit Appellants from receiving compensation from any recoveries which derived from, and which will continue to derive from, the USVSSTF. And for the reasons discussed above, the theoretical potential that some other source of recovery may perhaps someday provide an alternate source for common benefit compensation provides no basis for denying common benefit compensation from the USVSSTF fees.

Nor is there any merit to Appellees' claims that Appellants failed to affirmatively seek compensation for their common benefit work in the relevant proceedings below. After the district court determined in 2019 that the creation of a common benefit fund was appropriate, the *Federal* plaintiffs submitted a proposal concerning the establishment and allocation of the common benefit fund, unambiguously stating that "counsel for the *Federal* plaintiffs agree that the creation of a common benefit fund is timely." ECF No. 5359 at 2 n.3. That application surveyed the governing common benefit principles and argued that, consistent with those principles, "a common benefit fund should be established to compensate the committee members who have assumed and fulfilled the responsibilities imposed on the committees by the Court, and who have shouldered the burden of prosecuting

19

the claims for the plaintiffs as a whole," and that the "common benefit fund should be structured to benefit the committee members for their work on the MDL as a whole." *Id.* at 10. Magistrate Judge Netburn's September 30, 2020 Opinion & Order expressly recognized that Appellants (referred to therein as "*Federal* Plaintiffs") had made an affirmative claim for common benefit compensation, and expressly denied that relief. *See* SPA-18 ("[Federal] propose that the CBF should serve to compensate members of the Plaintiffs' Steering Committee for their relative investments prosecuting the MDL as a whole"); SPA-19 (Federal Plaintiffs not entitled to compensation for non-Iran work); *see also* SPA-23 – SPA-24 ("Presenting a way out of this morass, <u>Federal</u> Plaintiffs recommend that the Court appoint a special master to manage the common benefit process, in accordance with Court-established criteria . . ."). The fact that the district court has already directly addressed (and denied) Appellants' application for creation of a common benefit fund from USVSSTF applicable to all common benefit work forecloses Appellees' procedural arguments. *See* SPA-27 – SPA-33 (overruling *Federal* Plaintiffs' Rule 72 Objections to Judge Netburn's Opinion & Order).[4]

---

[4] Judge Daniels mistakenly indicated in his decision on the various objections that the *Federal* plaintiffs had argued the common benefit fund was premature, perhaps owing to confusion with the position advocated at that stage by Appellees. *See* Appellants' Opening Br. at 26; *compare* SPA-31. However, Appellants' objections were quite explicit that "developments relating to the USVSSTF [] confirm that the USVSSTF will produce fees sufficient to provide compensation for common benefit work and expenses incurred to date, and to provide funding for common benefit

## II.    THIS COURT HAS JURISDICTION OVER THE APPEALS

Appellants previously articulated the basis for this Court's jurisdiction both in their initial filings and in opposition to Appellees' motion to dismiss, and now in adopting these arguments by reference in response to Appellees' repeated jurisdictional arguments. *See* Dkt. No. 10-8 ("Form C"); *see also* Opp. to Motion to Dismiss. This Court previously directed that Appellants' opposition to the motion to dismiss will be treated as supplementing their merits briefs to the panel in addressing this appeal. *See* Dkt. No. 67.1. For the reasons explained in those briefs and briefly addressed below, the district court's orders are final and Appellants have standing to appeal. Thus, this Court has jurisdiction.

---

expenses that must be incurred to properly represent the plaintiffs in the ongoing litigation." ECF No. 5797 at 1-2. The objections further explained that "any approach that limits benefits from the present common benefit fund to the *Havlish* counsel's Iran default work" and fails to provide compensation for "all common benefit work" would be improper. *Id.* at 2; *see also id.* at 5 (common benefit fund limited to Iran "contrary to law"); *id.* at 10 ("The *Federal* plaintiffs' proposal contemplates the appointment of a special master to determine the most equitable approach for directing monies into the common benefit fund from the USVSSTF recoveries [] and to allocate that fund among the committee members pursuant to a framework designed to evaluate the relative contributions of the committee members"). Appellees' claims throughout their brief piggybacking on the mistaken language in the district court's order and emphasizing the supposed objections of Appellants to the common benefit fund, *see* Joint Merits Br. at 15-17, 22, disregard the evidence of record, which reflects that Appellants' explicit requests that the district court "endorse the proposed framework and procedures" for governing a common benefit fund applicable to the 9/11 MDL.

### A.     The Orders Below Are Final, Appealable Judgments

Appellees argue that the orders entered by the district court are not final, appealable judgments pursuant to 28 U.S.C. §1291. *See* Joint Merits Br. at 26-31. This simply is not true: the orders finally deny Appellants the ability to be compensated from USVSSTF payments to Appellees and their clients through a common benefit fund.

As addressed above, *see supra* at § I.B, the December 2023 orders are post-judgment fee orders arising from default judgments entered against Iran. *See also* Form C at 4. Each of those Orders "dismiss[ed] with prejudice" a motion to create a common benefit fund and made final the determination that Appellants are not entitled to *any* compensation from the USVSSTF recoveries flowing from that 9/11 MDL, even though their common benefit work enabled those recoveries and fulfilled the responsibilities mandated by the MDL court and relevant representation agreements. *See* SPA-34 – SPA-36. Courts within this Circuit recognize that post-judgment attorneys' fee awards are final, appealable orders when "the amount of fees and costs has been set by the district court." *Honeywell Intern., Inc. v. Purolater Prods. Co.*, 468 F.3d 162, 164 (2d Cir. 2006) (citing *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 86 (2d Cir. 2006)); *see also In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.,* 617 F. App'x 136, 140 (3d Cir. 2015) (finding fee assessment in

MDL to be an "appealable, final order" because it was "reduced to a definite amount").

Appellees assert that the December 2023 orders cannot be "final" because the orders do not establish a common benefit fund or otherwise allocate fees pursuant to a common benefit fund. *See* Joint Merits Br. at 29. Appellees also challenge Appellants' claim that the December 2023 orders award Appellants "zero fees" because the orders themselves do not "award" any sum certain. *Id.* at 30. While the orders themselves do not *establish* a common benefit fund, they do determine that Appellants are not entitled to any compensation from the USVSSTF fees for common benefit work, and thus operate as a final determination on the fee issues. The court below finally denied the relief Appellants sought. Appeal is appropriate.

Appellees' references to cases or treatises that characterize fee awards as non-final when they leave the dollar value indeterminate or present an "inherently tentative arrangement," *see id.* at 29, are inapplicable here because the December 2023 orders establish that Appellants are not entitled to any compensation. The value of Appellants' compensation has been determined as zero, and there is nothing tentative about that conclusion. For like reasons, cases cited by Appellees in their initial briefing on the Motion to Dismiss suggesting that *interim* fee orders are not final orders have no bearing on the parties' positions here. *See* Dkt. No. 56.1 at 10-11 ("Motion to Dismiss"). Appellees' reliance on *In re Bard IVC Filters Products*

*Liability Litig.*, 81 F.4th 897 (9th Cir. 2023), *see* Joint Merits Br. at 29, is misplaced and in fact supports Appellants' position, as that court found that the common benefit fund order was a final order for purposes of 28 U.S.C. §1291 and recognized that "finality is to be given a 'practical rather than a technical construction.'" *In re Bard IVC Filters,* 81 F.4th at 905. The December 2023 orders require no additional action by the district court and, from a practical standpoint, award zero compensation to Appellants.[5] For this reason, is the orders are both final and appealable.

Appellees once again argue that the final order requirement is unmet because (1) the caption does not parallel the orders from which the appeals are taken and (2) Appellants do not identify the orders from which they appeal. *See* Joint Merits Br. at 27. Neither point has merit.

As for the caption, as Appellants previously explained, this is an administrative issue that does not impact the substantive arguments presented in this appeal. *See* Opp. to Motion to Dismiss at 3 n.3. Appellees were in any event obliged to "promptly advise" the Court of any concerns with the caption at the outset of litigation. *See* Dkt. No. 9.1 at 2 (Docketing Notice). They did not do so. *See, e.g.,*

---

[5] Appellees' claim that there is no entry of judgment under Rule 54(b) – which is raised in the preliminary statement but not in the argument section – has no bearing on this appeal. *See* Joint Merits Br. at 2. A separate Rule 54(b) certification of the orders below was neither required nor available. *See Siegal v. Merrick,* 619 F.2d 160, 164 n.7 (2d Cir. 1980) ("An award of attorney's fees does not fall within the ambit of Rule 54(b) certification, which is directed toward determinations of the parties' claims"); *see also* Opp. to Motion to Dismiss at 14 n.5.

Dkt. Nos. 29, 47 (Notice of Appearance checking box that caption is "Correct"). Appellees did not seek a correction from the Clerk's Office when Appellants raised that suggestion previously, and still have not done so. Appellees cite no authority for the view that the appeal should be "summarily dismiss[ed]" because the caption indicates that the Appellants and Appellees are adverse parties. *See* Joint Merits Br. at 27. The practical reality for this dispute over counsel fees arising out of the 9/11 MDL determines standing and finality, and here, the law firms are plainly adverse to one another. A review of other dockets involving fee disputes between counsel representing parties in MDL proceedings also reflects a consistent practice of addressing the tangible dispute between parties without regard to how they may for other purposes be styled in the litigation caption. *See, e.g., Miller Law Firm, LLC v. Laborde Earles Law Firm,* 2022 U.S. App. LEXIS 30548 (9th Cir. Nov. 3, 2022) (addressing common benefit fund appeal in Roundup products litigation).

Moreover, contrary to Appellees' suggestion, *see* Joint Merits Br. at 27, Appellants left no doubt that the December 2023 orders are the subject of these appeals. *See* Amended Notice of Appeal, Dkt. No. 6.1 at 3 (stating parties appeal "from the final order entered on December 12, 2023 . . ."); *see also* Case No. 24-593, Dkt. No. 1.1 at 3 (stating parties appeal "from the final order entered on December 22, 2023"); *see also* Dkt. No. 10.8 (Form C, which states that "[t]he December 12, 2023 Order is appealable as a fee order related to judgments entered

25

against Iran . . ."); *see also* Case No. 24-593, Dkt. 9.7 at 3 (Form C, which states that "[t]he December 22, 2023 Order is appealable as a fee order related to judgments entered against Iran . . ."). Appellants timely filed their notices of appeal, and Appellants' Opening Brief makes clear in several instances that the appeal is taken from the December 2023 orders, which foreclose Appellants' rights to obtain compensation from the USVSSTF recoveries that flow from the 9/11 MDL. *See, e.g.,* Appellants' Opening Br. at 7, 28-29.

### B. Appellants Have Appellate Standing

The standing issue is equally straightforward. Appellants were harmed and have Article III standing because they sought and were denied payments based on the USVSSTF fees paid to others. *See supra* at § I.B; *see also* Opp. to Motion to Dismiss at 19-23. The district court rejected Appellants' argument that payment was due based on their extensive common benefit work in the MDL not directly related to the Iran defaults giving rise to USVSSTF fee payments. *See supra* at § I.A; *see also* Appellants' Opening Br. at 41-46.

Contrary to Appellees' arguments, *see* Joint Merits Br. at 38-40, even if the district courts' orders can be read not to foreclose the later creation of an independent common benefit fund that may allocate funds from any future, potential recoveries, Appellants still have already suffered a concrete and definitive harm. The extensive recoveries already received by other plaintiffs and their counsel will, under the

district court's orders, never be allocated to Appellants or form the basis for compensation under common benefit principles. This is a concrete injury that supports appellate standing.

Appellees' claim that Appellants lack standing because they "ha[ve] never made a motion for an award of attorneys' fees," *see* Joint Merits Br. at 39, is incorrect. As noted above, *supra* at § I.B, Magistrate Judge Netburn expressly considered (and denied) Appellants' request that the district court establish a comprehensive common benefit fund from USVVSTF fee recoveries, to provide compensation for all common benefit work in the MDL. Appellants explicitly proposed protocols governing the establishment and operation of a common benefit fund to be created by the district court. The fact that the district court expressly acknowledged, engaged, and denied Appellants' request for relief forecloses Appellees' procedural arguments.

Other cases cited by Appellees are consistent with finding standing here. The cited cases, *see* Joint Merits Br. at 38-39, stand for the unremarkable position that, in order to demonstrate appellate standing, an appellant must show that it is "actually aggrieved" from the order appealed from, and that it will receive a direct benefit if the orders below are vacated. As described above, *supra* at § I.B; I.C, Appellants readily meet that showing. In addition, Appellees gain no support from decisions holding that non-settling parties lack standing to challenge a settlement because

27

those cases hold that standing exists for "non-settling parties who can demonstrate that they will suffer plain legal prejudice as a result of the settlement." *See, e.g.*, *New Mexico ex rel. State Eng'r v. Carson*, 908 F.3d 659, 665 (10th Cir. 2018) (quotations omitted). The December 2023 orders plainly prejudice Appellants, in that those orders foreclose Appellants' ability to obtain compensation for common benefit work from the USVSSTF. Vacating the orders below will require the district court to establish a common benefit fund that compensates Appellants for their work in the MDL that has already benefited Appellees and their clients.[6]

## III. ADVISORY MANDAMUS SUPPORTS THIS COURT'S EXERCISE OF JURISDICTION

Appellees raise only superficial challenges to Appellants' alternative claim of jurisdiction based on advisory mandamus. *See* Joint Merits Br. at 32-38. If for some reason this Court found that jurisdiction did not exist based on the district court's

---

[6] Appellees' suggestion, *see* Joint Merits Br. at 40-43, that there is an insufficient factual record on appeal to support reversal is misguided and further exemplifies the errors in the district court's rulings below. The December 2023 orders were issued to formalize settlements that, by their very nature, excluded Appellants, despite the fact that Appellants consistently asserted and preserved their interests in obtaining compensation for common benefit work that enabled the recoveries relevant to this appeal. Furthermore, Appellees do not – and could not, in good conscience – dispute the extensive contributions undertaken by Appellants in furtherance of all plaintiffs in the 9/11 MDL. The appropriate forum to develop a factual record regarding the particular contributions of the attorneys representing plaintiffs in the 9/11 MDL is on remand, pursuant to a process that honors the legal principles necessary to prevent unjust enrichment and promote efficiency of MDL practice.

28

final determinations, the circumstances surrounding this dispute and MDL administration generally would readily support advisory mandamus.

As a preliminary matter, Appellees mischaracterize the record in claiming that it is "[n]otabl[e]" that Appellants' Opening Brief "made absolutely no mention of mandamus" and that Appellants raised this argument only after Appellees moved to dismiss for lack of appellate jurisdiction. *See* Joint Merits Br. at 32, 37. In fact, Appellants' Forms C, submitted months before Appellants filed their Opening Brief or Appellees moved to dismiss, very clearly raises advisory mandamus as an alternative basis of jurisdiction. In these initial filings, Appellants stated that the issues implicated by the December 2023 Orders "also support advisory mandamus, given that the operation and administration of a common benefit fund to multidistrict litigation arising out of the September 11, 2001 attacks raises significant issues of first impression applicable to all MDLs." *See* Dkt. No. 10.8 at 4 (Form C); *see also* Case No. 24-593, Dkt. 9.7 at 3 (same).

Appellees also misstate the applicable law by claiming the requirements for advisory mandamus are in addition to those required to secure traditional mandamus. *See* Joint Merits Br. at 34. While traditional mandamus generally requires an order that "amounts to a judicial usurpation of power or a clear abuse of discretion," this Court has also recognized that "the writ [can] serve[] a vital corrective and didactic function" in cases where an order "raised a legal issue of first impression in this

circuit." *Balintulo v. Daimler AG*, 727 F.3d 174, 187 & n.18 (2d Cir. 2013) (citations omitted). In fact, courts recognize that when "an issue important to 'proper judicial administration in the federal system'" is present, advisory mandamus is properly granted even when the error could theoretically be corrected on an appeal from the final judgment.[7] *In re Gonzales*, 623 F.3d 1242, 1246 (9th Cir. 2010) (quoting *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 259-60 (1957)), *rev'd on other grounds sub nom. Ryan v. Gonzales*, 568 U.S. 57 (2013).

Appellants meet the standards necessary to invoke advisory mandamus. The issues presented before this Court are "unsettled one[s] of substantial public importance, that [are] likely to recur, and . . . deferral of review would potentially impair the opportunity for effective review or relief later on." *In re Grand Jury Subpoena,* 909 F.3d 26, 28 (1st Cir. 2018) (quoting *United States v. Pleau*, 680 F.3d 1, 4 (1st Cir. 2012) (en banc)). This case raises significant issues regarding the manner in which a district court should administer a common benefit fund, issues which are critical to ensuring the efficient administration of MDL practice. And the import of the litigation itself, which involves critical issues of national security and the operation of this country's counter-terrorism policies, cannot be overstated. *Compare In re IBM Corp.*, 687 F.2d 591, 599-600 (2d Cir. 1982) (granting

---

[7] Appellees argue both that mandamus is unavailable because an ordinary appeal is available as a remedy, and also that there is no jurisdiction supporting an ordinary appeal. *See* Joint Merits Br. at 32 n.9. Both cannot be true.

mandamus in "extraordinary case[s]" involving national concerns, particular where proceedings are unusually lengthy); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d at 123-25 (Kaplan, D.J., concurring) (opining that a district court's set aside order related to a common benefit fund in an MDL was an appropriate topic for advisory mandamus).

Multidistrict litigation is intended to resolve the "serious challenges for the civil justice system that might be remedied by aggregating multiple claims." Thomas E. Willging & Emery G. Lee III, *From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation After* Ortiz, 58 U. KAN. L. REV. 775, 799 (2010). Given the role of MDLs in the federal docket, it is imperative that an MDL be managed efficiently, including by providing appropriate incentives to designated counsel to manage the litigation as a whole. Because the district court's order allows private settlements to displace the transparent common benefit fund process that would otherwise create proper incentives for attorneys assuming lead counsel positions in MDLs, and specifically prevents Appellants from securing compensation for common benefit work performed here, advisory mandamus supports this Court's review.

## IV. THE ARGUMENTS RAISED BY THE *HAVLISH* APPELLEES DO NOT IMPACT APPELLANTS' REQUESTED RELIEF

In March 2025, over a year after Appellants filed these appeals, the *Havlish* Appellees moved to intervene as Appellees. *See* Dkt. No. 47.2. Appellants did not

object to the motion to intervene, but reserved their rights to argue that the present appeals do not implicate the *Havlish* Appellees' rights. *Id.* at 2. The Response Brief filed by the *Havlish* Appellees does not raise unique arguments regarding the jurisdictional predicate for the appeals. As to the merits, the *Havlish* Appellees' Response Brief presents academic arguments that are not tied to the requested relief, and does not otherwise provide a basis to affirm the district court's December 2023 orders. In this regard, three aspects of the *Havlish* Appellees' Response Brief warrant further comment.

*First,* the *Havlish* Appellees misrepresent the nature and scope of the 9/11 MDL proceedings by considerably understating the extent of the work and thus injury sustained by Appellants. For example, according to the *Havlish* Appellees, Cozen was seeking to hold Saudi Arabia and Sudan liable in the 9/11. *See Havlish* Response Br. at 1. This is a gross oversimplification. In their leadership roles, Appellants have been responsible for leading the effort to hold accountable a broad spectrum of different defendants on the basis that those defendants provided material support to al Qaeda that resulted in the attacks of September 11, 2001. Those defendants include Saudi Arabia and Sudan, as well as Iran, other sovereign defendants, terrorist organizations, bank defendants, and individual defendants. *See, e.g., In re Terrorist Attacks on September 11, 2001,* 714 F.3d 118 (2d Cir. 2013) (addressing claims arising from the 9/11 MDL against foreign banks, financial

institutions, and wealthy terrorism financiers); *In re Terrorist Attacks on September 11, 2001,* 714 F.3d 353 (2d Cir. 2013) (addressing claims against the Kingdom of Saudi Arabia and an ostensible charity); *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659 (2d Cir. 2013) (addressing claims against foreign banks and their principals, al Qaeda charity front officials, businesses and their officers, and Specially Designated Global Terrorists). Pursuant to the obligations imposed on them by the district court, Appellants have undertaken common benefit work essential to the plaintiffs' prosecution of all of these claims and also critical to the district court's efficient management of the 9/11 MDL. *See* Appellants' Opening Br. at 13-16. The *Havlish* Appellees disregard the broader efforts that advanced the interests of the recovering plaintiffs, and the interests of their attorneys, including with respect to securing recoveries and related fees for the Iran judgments.

*Second*, a significant portion of the *Havlish* Appellees' Response Brief focuses on proving the value of the work that the *Havlish* Appellees undertook in furtherance of the default judgments against Iran. *See Havlish* Response Br. at 1, 6-12, 42-44. The *Havlish* Appellees champion a framework that links and restricts compensation to the efforts that yield specific and direct results. *Id.* at 5 ("[Cozen] has instead focused on pursuing different defendants, which has yet to yield results. . . . If and when Cozen ultimately prevails against other defendants, it can ask the District Court to compensate Cozen for its role in those successes"); *see also id.* at

50 (noting Appellants have "engaged in substantial common *work*" but are not entitled to compensation insofar as "that work has not yet produced a common *benefit* in the form of a judgment or settlement"). This "eat what you kill" approach directly conflicts with the principles integral to MDL practice, and would produce exactly the result those principles are designed to prevent. It also ignores the extent to which prosecution of the full universe of claims was a requirement of Appellees' representation agreements, and thus a necessary precondition to any plaintiff receiving fees from any recovery source.

These appeals do not require the Court to assess the efforts of the *Havlish* Appellees. Appellants do not challenge the *Havlish* Appellees' claims that those attorneys worked to secure non-adversarial default judgments against Iran. Appellants instead take issue with the district court's December 2023 orders on the basis that those orders confirmed fractional settlements that stripped Appellants of their right to receive compensation for common benefit work, even where such work enabled the massive recoveries that flowed from those judgments.

*Third*, Appellants are not seeking to undo private settlements or claw back settlement funds allocated to the *Havlish* Appellees through private agreements. *Id.* at 38-40. Appellants do seek to vacate orders that finalized fractional settlements that excluded interested parties, foreclosed creation of an appropriate common benefit fund structure, and approved a framework that prevented Appellants from

asserting their rights to claim compensation for common benefit work that enabled the USVSSTF recoveries.

The procedural history leading up to the December 2023 orders provides additional context on these points. In October 2023, shortly before the district court entered the orders that are the subject of these appeals, the *Havlish* Appellees sought an *ex parte* conference before the district court, which would include certain unidentified attorneys, to address pending issues relating to a common benefit award. *See* Appellants' Opening Br. at 27-29. Appellants promptly objected to this request and raised their preserved interests, advising that a "resolution of the common benefit fund issues will not be achievable if it does not address the interests of all relevant parties." *Id.* at 28 n.7 (citing ECF No. 9387). The district court proceeded with an "off-the-record teleconference" with "interested parties" on common benefit issues. *See* ECF No. 9394. Appellees shortly thereafter advised the Court of its resolution of "all outstanding issues" relating to the common benefit fund, and the district court thereafter entered the December 2023 orders that Appellees described as a "condition" of the resolutions. *See* Appellants' Opening Br. at 28 (discussing ECF No. 9460). Given this context, the *Havlish* Appellees' suggestion that the December 2023 orders have no impact on Appellants because they "do not even mention Cozen by name" is plainly incorrect. *See Havlish* Response Br. at 28-29.

The December 2023 orders finalize settlements that invalidate Appellants' rights without due process. Appellants' claim for relief in these appeals does not in any way prevent the *Havlish* Appellees from seeking compensation for the work they undertook in furtherance of the Iran default judgments, albeit within a structure that considers the full scope of the 9/11 MDL, and allocates USVSSTF funds accordingly.

## V.  CONCLUSION

For the reasons set forth herein, in Appellants' Opening Brief, and in Appellants' Opposition to Appellees' Joint Motion to Dismiss Appeal for Lack of Appellate Jurisdiction, Appellants respectfully request that this Court vacate the district court's December 2023 Orders and remand for further proceedings with a direction to establish and effective common benefit fund.

Dated:  August 28, 2025                    Respectfully submitted,


                                           /s/  Sean P. Carter
                                           Sean P. Carter, Esq.
                                           Abby J. Sher, Esq.
                                           COZEN O'CONNOR
                                           1650 Market Street, Suite 2800
                                           Philadelphia, PA 19103
                                           (215) 665-2000

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

On August 4, 2025, this Court issued an Order increasing the word limit for this brief to 10,500 words. *See* Dkt. No. 103. This brief complies with the Court's Order because it contains 8,809 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated: August 28, 2025

/s/     *J. Scott Tarbutton*
J. Scott Tarbutton, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused to be filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on August 28, 2025. I further certify that the foregoing was served on all counsel of record in this appeal by CM/ECF pursuant to Second Circuit Rule 25.1.

/s/     *J. Scott Tarbutton*
J. Scott Tarbutton, Esq.

LEGAL\79862975\1

38